ANDREW J. KNOTT AND LEVI KNOTT, RESPONDENTS, *v.* JOSEPH KNOTT, APPELLANT.

STATUTE OF FRAUDS—PARTNERSHIP AGREEMENT.—Appellant and respondents, being each the owner of different tracts of land and of certain personal property, entered into a verbal agreement to sell their personal property, sell or lease their farms, remove to the city of Portland, and go into business as partners. This agreement was carried into effect. They thereafter sold their personal property, and turned the proceeds into a common fund, removed to Portland and entered into business there together. After their removal to Portland they conveyed their several farms to one Rice as a part of the consideration for the conveyance by him to appellant of a farm in Washington county. This farm was afterwards exchanged by appellant for a ferry and ferry franchise at the city of Portland; the appellant, with the consent of respondents, taking the legal title thereto in his own name: *Held,* 1. That the partnership agreement, though not in writing, was valid; 2. That the partnership agreement might be proven by parol; 3. That the ferry and franchise became partnership property, and the appellant took the legal title thereto in trust for the partnership.

APPEAL from Multnomah County.

This suit is for a dissolution of a partnership and an account and sale of partnership property. The respondents are sons of the appellant. The parties to the suit were, in 1857, the owners, respectively, of different tracts of land in the Umpqua valley, and of certain personal property. The land of the appellant consisted of six hundred and forty acres, and that of the respondents of three hundred and twenty acres each.

The respondents allege that in that year (1857) the parties to the suit made a verbal agreement to sell their personal property, sell or lease their farms, remove to Portland, Oregon, and go into business together; that this agreement was carried into effect; that thereafter their personal property was sold and the proceeds of such sale were turned into a common fund; that the parties then removed to Portland and engaged in various pursuits together; that the business of the partnership was carried on in Joseph Knott's name. These allegations of a partnership agreement and of partnership business are denied.

After the removal to Portland, the parties conveyed their

several farms to one Rice in part consideration of a convey-
ance by Rice to the appellant, Joseph Knott, of a tract of
land near Portland, known in the case as the Rice farm. Af-
terwards, the Rice farm was conveyed by appellant to one
Stevens as a part of the purchase price of a ferry and ferry
franchise transferred by Stevens to the appellant. The
respondents allege that the title to the ferry property was
taken in the appellant's name with their consent. This
ferry and franchise constitutes the principal property of the
alleged partnership. The matter was referred to a referee,
who found in favor of the respondents. His report was con-
firmed by the circuit court, and a decree rendered accord-
ingly, from which this appeal is taken.

*Dolph, Bronaugh, Dolph & Simon* and *Thayer & Williams*,
for appellant.

*E. A. Cronin, H. T. Bingham* and *Hill, Durham & Thomp-
son*, for respondents.

By the Court, WATSON, J.:

Before passing upon the questions of fact, presented by
the transcript in this case, it becomes necessary for us to
examine a question of law which has been ably argued be-
fore us at the hearing of this appeal. The greater portion
of the property in dispute is real property, and the legal
title is in Joseph Knott, the appellant. It is admitted by
the respondents that the legal title to this property was
taken in his name by mutual agreement, and with their
consent. It appears that one-half section of land belonging
to A. J. Knott, and one-half section of land belonging to
Levi Knott, together with one section of land belonging to
appellant and his wife, were conveyed by them to James E.
Rice as the consideration for the purchase of a tract of land
in Washington county, which was conveyed to appellant,
and afterwards conveyed by him to James B. Stephens, in
part payment for the ferry, now alleged to be a part of the
property of the partnership.

It is claimed by the respondents that these conveyances
were made in accordance with the partnership agreement

set up in the complaint, and that the equitable title thereby vested in the partners, Joseph Knott holding the legal title in trust for the partnership. It is admitted that the partnership, if formed at all, was formed by a verbal agreement, and that there is no written evidence of its existence unless the signing of a certain promissory note, given by appellant to Sol. Abraham, June 29, 1861, for the purchase-money of a band of cattle, to which he admits he signed his own name and those of A. J. Knott and Levi Knott, the respondents, is written evidence of the existence of the partnership. This note is before us, but we do not think it tends to prove the existence of a partnership between appellant and respondents. It is a simple promissory note, in the usual form, by which the makers jointly and severally promise to pay to Sol. Abraham or order the sum of nine thousand four hundred and seventy-five dollars and forty-two cents. It does not refer to any partnership and is not signed by any firm name. There is no presumption that persons who sign jointly a promissory note are partners. There is then no written evidence of the existence of the alleged partnership or of the partnership trust in the real property in dispute. It is essential that a partnership which is alleged to be the owner of land the legal title of which is in one of the partners, shall be created or proven by a memorandum in writing. It is not necessary for us in this case to declare what would be the law, if the partnership had been formed for the purpose of dealing in land. There is no evidence tending to show that the partnership claimed to exist in this case was formed for the purpose of dealing in land. The agreement set up in the complaint was to "enter into a partnership for the purposes of trade."

The evidence of respondent, A. J. Knott, is that the agreement was "to sell off all property, household furniture, rent, or lease our farms, put our money together, move to Portland, and go into business together as equal partners." The evidence further tends to prove that it was not then definitely known or understood what business they would engage in.

To adopt the language of the able report of the referee before whom this case was first tried in the court below: "There is no evidence whatever that the alleged partnership in this case was formed for the purpose of dealing in land. The contract, according to the testimony was that the parties should sell off their personal property, rent or sell their farms, put their money together, and go into general business together as equal partners. There is not a syllable of evidence going to show that the parties at that time contemplated any speculation in real estate, and the proof is that the alleged firm did not in fact deal in land in any way for nearly four years after its formation in 1857."

It is true that the greater portion of the partnership capital to be contributed by each was to be derived from the leasing or sale of the donation claims owned by them separately. But it was not all to be derived from the sale or rent of the real property. Some personal property was owned by each. That and their labor was to go into the community. Even if the agreement to sell or lease the real property had never been performed, the partnership might well have been carried on with the proceeds of the sale of the personal property and the joint labors of the partners. We think there is no doubt that such a partnership can be both found and proven by parol. We are also of the opinion that a partnership formed by a verbal agreement may become the equitable owner of real property whenever the use and ownership of such property is a necessary incident to the partnership business or is a necessary investment of the partnership funds. Mr. Parsons, in his work on Partnership, p. 363, uses the following language: "The general rule is undoubtedly this: Real estate purchased for partnership purposes and appropriated to those purposes and paid for by partnership funds, becomes partnership property; nor does it seem to be material in what manner or by what agency the land is bought, or in what name it stands?" On page seven of the same work he uses the following language: "Sometimes, though rarely, the question occurs whether the provisions of a partnership come within the requirements of the statute of frauds, and

must therefore, according to some authorities, be in writing, but this may be doubted."

In note D. to the same page he, after citing *Smith* v. *Burnham,* 3 Sumner, 35, and numerous other English and American authorities concludes, "that the result of the cases as well as of true reasoning, would seem to be that of the vice-chancellor in *Dale* v. *Hamilton.*"    Mr. Parsons shows what was his understanding of the case of *Dale* v. *Hamilton,* by his quotation from the opinion in that case set out in the note above referred to in which he says: "The vice-chancellor (after a statement of the question raised), said when the proposition was first advanced by the plaintiff.    I confess it appeared to me that to admit the argument to the extent contended for, would be virtually to repeal the statute of frauds or nearly so, but upon examination of the authorities he felt himself bound to hold that the plaintiff might first prove by parol the existence of the partnership as an independent fact, and that being established might then show by the same evidence his interest in the lands, considered as the substratum of the partnership." (See, also, *Levi* v. *Brush,* 1 Sweney, N. Y., 650; *Bopp* v. *Fox,* 63 Ill. 450.)

While there is a conflict of the authorities, many of the courts having followed the decision in *Smith* v. *Burnham,* we regard the doctrine laid down in *Dale* v. *Hamilton,* as better adapted to the course of business in this country where mercantile manufacturing and various other partnerships are necessarily compelled in the course of their business, the investment of their capital and the collection of debts due them, to become the owners of real property.

Many of the cases go further than is necessary to admit the proof and sustain the partnership in this case.    The answer sets up the conveyance by respondents to James E. Rice of their donation land claims as a part of the consideration for the conveyance by him to appellant of the farm in Washington county, and admits that they, at the time, received no other consideration, and that no contract was made by which they were to receive any other consideration for their land.

If the partnership agreement was that this land should be conveyed to Joseph Knott as the trustee and representative of the partnership, and if so much of the agreement while it remained executory could not have been proven or enforced, certainly its entire performance took it out of the operation of the statute of frauds. It could make no difference whether respondents sold their land and paid the money received for it into the partnership fund to be paid to James E. Rice for the farm conveyed by him to appellant, or conveyed the land directly to him in payment for the farm.

This being our opinion of the law, we do not think the partnership agreement alleged to exist in this case, or the ownership of the lands in dispute are affected by the statute of frauds. We next proceed to consider the evidence. The first question of fact, and the one upon which the decision of this case mainly depends is, does the evidence before us prove the existence of a partnership between appellant and respondents? The decision of this question is rendered difficult, not so much by the quantity as by the character of the evidence.

The suit is between a father and his sons concerning transactions which took place many years ago, when the confidence and affection which are due to that relation in life, had not been impaired, and when neither party contemplated the necessity of proving in the courts their mutual dealings, and neither was expected to stand upon his guard against possible fraud or wrong on the part of the others. That confidence and affection are now so thoroughly destroyed that we find father and sons flatly contradicting each other, on their oaths, in matters in which a contradiction cannot mean mere mistakes or difference of opinion, but a willful disregard of the truth in one or the other. We also have the parties going back upon the record of twenty years of life of each other to blacken and impeach characters, which the ties of blood and pride of family should prompt them to uphold and defend. Aside from these mutual contradictions, all of the parties are more or less contradicted by the evidence of disinterested witnesses.

Amidst these wholesale contradictions we are left in such doubt whether to believe the sons against the father, or the father against the sons, that we are driven as far as possible to ignore the testimony of all parties in interest and to decide the case upon the admitted facts and the evidence of the disinterested witnesses.

It is admitted that from the time the parties removed to Portland, in the year 1857, until some time in the year 1862, they lived a large portion of the time in the same house, and that respondents worked and dealt with the property nominally owned by appellant, without other wages than what they received from time to time for the support of their families. Appellant, in his answer, admits that in the year 1861 he traded the donation claims of respondents with his own to James E. Rice in exchange for a farm in Washington county, and that the legal title to the farm was taken in his own name.

Respondents conveyed their lands to Rice in consummation of this trade. He alleges that they were to receive no compensation. He was authorized to use their lands in trading for the farm. That was all. He claims it is true that he has since that time advanced to respondents money and property which was of greater value than their lands; but he does not claim that such advances were intended or accepted as a payment or satisfaction for the land.

We think these facts more consistent with respondents' theory that there was a partnership agreement between them and appellant, in accordance with which this transaction took place, than with that of appellant that he was merely permitted to use the claims without any agreement for compensation. It is not at all probable that these young men, with families depending upon them for support, thus gave away the principal part of their property. Even if there was no agreement for compensation or partnership in the land, a resulting trust would have arisen in favor of respondents in the Rice farm, and in the property purchased with that farm, to the extent to which their property constituted a part of the consideration for its purchase. When the purchase-money of land is paid by one person,

and a conveyance. of the legal title taken in the name of another, such person will be deemed to take the legal title in trust for the person furnishing the consideration. (Story's Eq. Jur. sec. 1201.)

It makes no difference whether the purchase-money is paid in money or other property, if it be in fact paid. We think this fact tends to prove the alleged partnership. That the Rice farm was afterwards, without any change in the equitable rights of the parties, traded to James B. Stephens in part payment for the ferry is also a fact tending to prove the partnership.

There is evidence tending to show that appellant, at various times and to different persons, admitted the alleged partnership. A. P. Ankeny, who was in the fall of 1857 or 1858 engaged in the butchering business with appellant, testifies that he had a conversation with appellant and respondents about that business. The terms of the partnership were then agreed upon, and it was agreed that the business should be carried on in the name of appellant and Ankeny. He understood that respondents were interested, but the business was carried on in the name of appellant as a matter of convenience.

James E. Rice testifies that appellant frequently told him how they did business together, that they were all doing business in partnership. B. P. Smith testifies that appellant told him that they had sold or traded their farms for the ferry, and that it paid a good deal better than farming. Thomas Batty, Levi Estes, L. F. Mosher, W. F. Allen, Ben. Cornelius, and a number of other witnesses, testify to admissions of appellant that he and respondents were doing business together as partners.

We admit the general infirmity of this kind of evidence, and give full force to a rule that it should be received and weighed with caution. A witness may have misunderstood the language used, or may have incorrectly repeated it. If the admissions proven in this case had been made to but one or two witnesses, or at the same time, they might be entitled to but little weight as evidence. But they were made deliberately to a large number of witnesses at differ-

ent times running through a period of more than fifteen years. It is not possible that all of these witnesses are mistaken. Such admissions fully proven are very satisfactory evidence.

We are satisfied from the evidence of the existence of a partnership between appellant and respondents. But it does not follow conclusively that the interests of the partners are equal. Their interests are presumed equal in the absence of evidence showing a different agreement, but like all other *prima facie* presumptions, it may be overcome by evidence. Many of the admissions of appellant relied upon by respondents to prove the partnership, tend to prove that the partnership included the wife of appellant or R. J. Ladd. These admissions all taken together seem to go as far to establish the interest of Ladd or of Mrs. Knott in the partnership as that of respondents.

It may be objected that the wife of appellant being a married woman could not have been a partner. This is true. But if the agreement and understanding of the parties recognized her right to one fourth of the partnership property, respondents are not entitled to any portion of that fourth.

A. J. Knott, one of the respondents, testifies that his mother, in talking about the business would say that Mrs. Ladd should have her interest when she died. His propositions to compromise, which he admits he made to his sister, seem to assume that her interest in the partnership property was equal to his own. Several witnesses testify that R. J. Ladd in his life-time seemed to be a partner in the firm. Other witnesses testify to the admissions of respondents before the commencement of this suit that they were each entitled to but one fourth of the partnership property.

In some instances they state that the remaining one fourth belongs to their mother, and in others that it belongs to Mrs. Ladd. In either event they are each entitled to but one-fourth of the partnership property. If Mrs. Ladd is entitled as against appellant to one fourth of the partnership property in his hands, he is still entitled to retain it

against all the world but her.  That the evidence shows each of the respondents to be entitled to. but one fourth of the partnership property is no objection to their recovery of that interest in the suit.  They have not proven their entire claim set up in the complaint, but they have proven part of it, and for that part are entitled to a decree.  There is no variance between the allegations and proof which could have prejudiced appellant at the trial, or prevent a proper decree from being made in this case.  We find that respondents are each entitled to one fourth of the partnership property.  As to the amount and description of the partnership property and the account taken, we agree with the court below.

As the dissolution of the partnership, the settling of the partnership account, and the sale and distribution of the partnership property are matters in which all the partners are mutually interested, the decree of the court below should be so modified as to make the costs and disbursements first payable out of the proceeds of the sale of the partnership property.

The decree of the court below will therefore be affirmed, with the following modifications:  1. That respondents A. J. Knott and Levi Knott be each decreed to receive one fourth of the moneys found by the court below to have been received by Joseph Knott, appellant, from the earnings of the partnership over the expenses, instead of one third as decreed by the court below.

2. That respondents A. J. Knott and Levi Knott be each decreed to receive one fourth, and that appellant, Joseph Knott, be decreed to receive one half of the proceeds of the sale of the partnership property and money in the hands of the receiver, after the payment of the costs and disbursements therefrom, instead of each receiving one third, as decreed by the court below.

3. That the costs and disbursements of this suit be first paid out of the proceeds of the sale of the partnership property and money in the hands of the receiver, before any distribution of the same between the parties.