CHARLES A. COLLINS, in equity, *vs.* ISAAC F. DECKER.

Kennebec.   Opinion June 5, 1879.

*Partnership,—real estate, equities in, and funds of.   Statute of frauds.*

C bargained for a grist mill and appurtenances, paid $1,000 down, and took a bond for a deed; made a verbal contract to sell it to D, and received $1,300 of him in part payment; D took the possession, laid out a considerable sum in repairs and improvements, and carried on the business a short time, when he and C made a verbal contract of copartnership in the grist mill business, and carried it on together at this grist mill for two years, neither of the parties claiming rent; the grist mill was taxed to the company, and one year's taxes were paid out of the company's funds, and payments were made on C's notes named in the bond for a deed which he held, by giving credit to the parties to whom the payments were made on the company's books.   A dam tax of $75 was paid in the same manner.   At the end of the two years C gave D notice that he was going to dissolve the copartnership; D proposed that it should be mutual, and that they should bid for choice of the mill property.   C does not deny that he told D that he would shortly say what he would give or take, but he did not do this; yet a few days afterwards he took a deed of the mill property to himself, discharged the bond, excluded his copartner, mortgaged the mill property to secure some partnership debts, and some of his own and the balance remaining due of the purchase money, and brought this bill in equity to close the partnership affairs.   The bill and answer both admit the existence of the partnership.   It is satisfactorily proved that the verbal contract for the sale of the mill from C to D was abandoned by mutual consent when they went into partnership, and that the understanding between them was that the purchase of the mill property should be completed on partnership account, the sums previously paid and expended by the partners severally, toward the purchase or in the improvement of the mill property, to be regarded as so much contributed by them respectively to the partnership funds.

*Held,* that there is nothing in the statute of frauds to prevent partnership equities from attaching to the grist mill property, and that it should stand charged, as between these parties, for the payment of partnership debts, and any balance that may be found due to either of the partners upon the final adjustment of the partnership accounts; the legal title not to be disturbed except as may be necessary for these purposes.

BILL IN EQUITY, heard on bill, answer and proofs.

The bill alleges that plaintiff on November 17, 1875, formed a partnership with the defendant under the firm name of Collins & Decker, manufacturing flour, corn, meal, and grain, and dealers in the same, and doing custom work in a mill belonging to

the plaintiff in Clinton in said county of Kennebec; that said defendant had on hand at the time about $300 worth of corn which he turned into the partnership, also paid from his own means about $70 for freight on a car load of wheat, and these two sums are all that he put into the partnership from his private funds; that the plaintiff had purchased a car load of wheat prior to the formation of the partnership, and afterwards paid $175 from his private funds towards the same, and the balance was paid out of the partnership funds. Also during the first three months of the partnership, the plaintiff purchased and paid for two thousand bushels of corn amounting to $1,325, for which he has not received any compensation, and that amount is still due him; and afterwards from time to time he put into the firm's business about $375 more in money, as near as he can now estimate. The partnership ran on in this way, doing a large business, amounting on an average to $15,000 a year. That the plaintiff becoming dissatisfied with the management of the defendant, and believing that it was not safe for the plaintiff to continue the business with him, on November 15, 1877, he gave said defendant written notice that the partnership was dissolved from that day, and also notified all persons of whom the firm had purchased goods, and all with whom they had had any dealings, of such dissolution.

That on said November 15, 1877, at the time of the dissolution of the partnership, there was stock on hand, manufactured and unmanufactured, consisting of flour, wheat, oats shorts, rye, and some other articles, amounting to $1,150, and at the same time there were demands due to the firm consisting of book accounts chiefly and a few notes and an execution which had been levied on real estate of the debtor, amounting in all to about $3,000. The firm at the same time was indebted to various parties to the amount of about $1,900, and plaintiff is ready and willing to pay his part of said debts and liabilities as the court may direct when the deficiency is ascertained.

That after November 15, 1877, the day of the dissolution, he had possession of the mill, and of the fifty-six barrels of flour in the same and of the cash-book, day-book and ledger belonging to the firm in the office connected with the mill and in a safe with

a combination lock; and that on November 19, 1877, in the absence of the plaintiff, the defendant took away from said safe and office and mill the three books above mentioned and a few small notes and a mortgage bill of sale of personal property, and carried them away from the premises, and has posted notices in the town of Clinton, forbidding all debtors to the firm from paying the plaintiff and calling on them to pay to him, and is about to collect all accounts that are due said firm. And on the same November 19, in the absence of the plaintiff, and knowing that he was absent, took from said mill thirty-six barrels of flour and hauled it to the depot in said Clinton, with orders to forward the same to Fairfield, but said flour is still at the depot and will be sent out of the county unless prevented immediately.

That said defendant intends to collect all the debts due to the firm and take possession and dispose of all the property belonging to the firm, and leave the debts of the firm unpaid; that said defendant has no attachable property and cannot be compelled by any legal process to pay the debts of the firm if he once converts the assets into money, and that the plaintiff and the creditors of the firm will suffer irreparable loss, unless the defendant is restrained immediately from converting said assets into money.

Wherefore plaintiff prays that a temporary injunction may be issued to restrain said defendant from collecting any of the debts due to the firm, and from converting any of the property of the firm into money or disposing of either by himself or servants or agents or attorneys, until the further order of this court, or the appointment of a receiver; and further prays that a receiver may be immediately appointed to take possession of all the assets of said firm, and dispose of the same to the best advantage and interest of all concerned, collect all the dues and pay all the debts of the same, and distribute the balance, if any, according to the rights of all parties concerned.

Prayer, that the respondent may answer; and that the court will thereupon decree a dissolution of the partnership, and the closing up of its business, the payment of all the debts of the

firm and a distribution of the balance, if any, to the plaintiff and defendant, according to their equitable rights.

The defendant answers :

That on September 10, 1875, he made a parol agreement with the plaintiff for the purchase of said plaintiff's mill and mill privilege or lot situate in Clinton, the price which he was to pay said plaintiff being $3,000, and he paid down at that time $1,300, and has the plaintiff's receipt therefor. The defendant thereupon entered into possession of said mill. The defendant learned a short time after he made the aforesaid agreement that all the title which the plaintiff had to said mill property was a bond for a deed of the same, from Japhet M. Winn and William Lamb, of said Clinton. At the time when the defendant paid to the plaintiff the said sum of $1,300, it was agreed by and between the plaintiff and defendant that the balance thereof should be paid as the same should be needed by the plaintiff to pay his notes given to said Winn and Lamb, described in the aforesaid bond, the amount of said notes being the sum which said Collins was to pay said Winn and Lamb for a deed of said mill property, being $2,500. During the two months next following his entry into the possession of said mill property, the defendant made extensive and valuable repairs and improvements to said mill, to the amount of $800.

On November 18, 1875, the plaintiff and defendant entered into a partnership under the firm name of Collins & Decker, for the manufacture of flour, corn, meal, and general dealing in grain, in said mill; and it was then and there agreed between them that the previous contract between them as to the purchase of said mill property by the defendant of the plaintiff should be abandoned, and that the aforesaid bond should be owned by them as partners, and that the amount due said Winn and Lamb on said bond should be paid by them equally, and that in making said payment due allowance should be made to the defendant for what he had paid to said plaintiff and for the repairs and improvements made on said mill as before specified, and that when the amount of said notes specified in said bond should be fully paid, the deed of said property should be taken to the plaintiff and defendant as

partners, and that such an adjustment of their previous doings and relations should be made as would be equitable and just.

The defendant at that time had on hand some four or five hundred dollars worth of grain and other property connected with the business, which he turned into the partnership ; and the plaintiff turned into the partnership about $900 worth of grain, and these elements were by said agreement to be equitably adjusted with all other rights and equities between them.

That during the continuance of said partnership there was paid out of the partnership funds on said notes the sum of about $400, as nearly as the defendant can now remember.

That, during the continuance of said partnership, said Collins sold on his own account quite a quantity of grain and other property of the partnership, the amount of which the defendant can not definitely state, and the plaintiff at various times used the monies of the firm, and has rendered no account thereof.

The whole amount of means of any kind which said plaintiff put into the partnership business out of his own private funds is as follows, so far as the defendant has any knowledge of the same, and no more, to wit : four car loads of corn, amounting to about $940. The bill of $175, which the plaintiff in his bill alleges he paid out of his own private funds, the defendant says was paid out of the partnership funds. The plaintiff's claim in his bill that subsequently to the formation of the partnership he put into the firm business, from time to time, about $375, has no foundation in fact, so far as this defendant has any knowledge and so far as he has any belief.

The defendant admits that said partnership continued till November 15, 1877, when the same was dissolved by the plaintiff. The stock on hand and the other means and the liabilities of the firm at the time of said dissolution, so far as the defendant is able to judge, are correctly stated in the plaintiff's bill.

That on November 15, 1877, the plaintiff excluded him, the defendant, from said mill by putting thereon a new lock to which the defendant had no key, and informed the defendant that he had no rights therein, and gave public notice that all debts due the late firm should be paid to the plaintiff.

That at the dissolution of said firm, on November 15, 1877, defendant had fully paid his proportional part of the consideration for the purchase of said mill, yet notwithstanding that fact, a short time thereafter, and as the defendant now understands the time to have been on November 17, 1877, the plaintiff took a deed of said mill property to himself alone, instead of to them as partners, as had been previously agreed between them and as in justice and equity he should have done.

That he is ready at any time to go .into an account and submit all their accounts to a master ; and he will account for all he ever received of the partnership funds, and he claims that the complainant shall do likewise ; and that a fair settlement will show a balance due the defendant, and he prays the court to decree this balance paid to him.

Facts, outside of bill and answer, sufficiently appear in the opinion. ·

*J. Baker*, for the plaintiff.

*S. S. Brown*, for the defendant.

BARROWS, J.　In 1875 the plaintiff had the possession and a bond for a deed of a grist mill and its privileges, for which he had paid $1,000, and was to pay, in order to entitle himself to a conveyance, $800 more April 7, 1876, and $770 April 7, 1877. In September, 1875, he made a verbal contract to sell the property to Decker, the defendant, for $3,000 ; received $1,300 from him, and gave him a receipt for that amount " as pay towards mill." Under this arrangement Decker took possession, and was engaged in running the mill and making repairs and improvements upon it, at considerable expense, until November 18, 1875, when the parties plaintiff and defendant made another verbal contract to carry on the business of the grist mill in partnership, which they did for about two years. Then the plaintiff notified defendant that he was going to dissolve the partnership, and defendant proposed that the dissolution should be mutual, and that they should " bid for choice of the mill property." Plaintiff does not contradict defendant's testimony that he (the plaintiff) said he would shortly "say what he would give or take." He did

not do this, however, but, a day or two after, took a deed of the mill property in his own name, discharged the bond, and mortgaged the property back to secure certain indebtedness of the firm, and some of his own, and what remained unpaid of the purchase money, excluded his late copartner from the possession, and at once brought this bill in equity to close the affairs of the copartnership.

Thus far no material conflict as to facts. But defendant claims, and plaintiff denies, that when they went into partnership it was verbally agreed and understood between them that the previous contract as to the purchase of the mill by defendant from plaintiff was to be abandoned by mutual consent; that the bond for the deed was to be regarded as partnership property, the balance due on the purchase money under the bond was to be paid by the partners equally, and when paid the deed should be taken to them as partners; that it was agreed that the $1,000 paid by Collins towards the purchase money and the $1,300 paid by the defendant to Collins should be regarded as so much of the company funds furnished by them respectively, as well as the grain stock and personal property which they turned in; that defendant was to be allowed, as contributed by him to the company funds, the amount expended by him for repairs and improvements on the mill, and that all these matters were to be equitably adjusted as partnership transactions.

To such a partnership, a place to carry on the business would be indispensable, and it is natural to suppose that the attention of the parties would be given in the outset to securing it. Yet the plaintiff testifies that neither then nor ever during the time they were in partnership was anything said about the rent of the mill, though it was worth $300 a year, and that he never called upon defendant for money on account of the purchase of the mill after they went into partnership, though he had done so a number of times before. A disinterested witness testifies that the plaintiff told him, in the afternoon of the day that the partnership agreement was entered into, that " he (Collins) was to take one-half of the mill back, allowing Decker one-half of the amount which he had paid him for the mill and one-half of the cost of the improve-

ments and repairs which Decker had put on the mill, and that they were going on in partnership, Collins to do the mill work and Decker the outside work, and each one to furnish one-half the capital to run the mill."

Taking the natural probabilities into the account in connection with the testimony, we regard it as satisfactorily proved against the plaintiff's denial that the contract for the sale of the mill by him to the plaintiff was abandoned by mutual consent when they went into partnership, and thenceforward the understanding was that the purchase of the mill was to be completed by them jointly, and that it was to be their joint property when paid for, so much as had been paid for or laid out upon it by each to be treated as contributed to the capital of the company, and to be finally adjusted on equitable principles as partnership business.

The questions for determination are how far this verbal agreement was binding on the defendant, and whether in consequence of it and the acts of the parties subsequently the mill property is to be regarded as company property, notwithstanding the plaintiff finally took the conveyance to himself alone.

Some sums were paid out of the partnership funds in part payment of the plaintiff's notes given for the balance of the purchase money when he took the bond for a deed, and also a dam tax of $75; and the mill property was taxed to the partnership, and the tax of 1876 was paid out of the company's money. Some of these payments were made by giving credit on the books of the copartnership to the parties to whom the payments were made. Bill and answer alike assert the existence of a copartnership formed for the purpose of carrying on the grist mill business, and the proof is plenary that the mill property in question was that which was used by the partnership, without the payment of rent to any one, or the assertion of a claim for rent by any one, for the purposes of their business as long as they continued in partnership, and that it was partly paid for as above stated out of company funds.

Is it to be regarded as partnership property in the settlement of the partnership estate? The plaintiff relies upon his legal title and the statute of frauds as conclusive that it should not be so regarded.

There are not a few cases in which there has been more or less elaborate discussion of the effect of the existence of a copartnership, sometimes proved by written articles of agreement and sometimes established otherwise, upon the beneficial interest in, and ownership of, real estate, where such interests were claimed and found not to correspond with the legal title. The effect of the statute of frauds in such cases has necessarily been much considered. It would be difficult, if not impossible, to reconcile all the decisions and dicta upon this topic emanating from courts whose great learning and high authority are nevertheless conceded.

Much of the apparent discrepancy, however, will disappear if the position of the parties litigating towards each other and their relation to the subject of controversy, the purposes for which the statute is invoked, and the limitations of the doctrines laid down, are all carefully observed.

Sometimes the contention has been between the widow and heirs of a deceased partner and the surviving partners as to the mode of disposition of real estate not needed in the form of cash for the payment of debts or the adjustment of the affairs of the partnership between the partners themselves, as in *Shearer* v. *Shearer*, 98 Mass. 107, and *Wilcox* v. *Wilcox*, 13 Allen, 252 ; sometimes between the copartnership creditors and creditors of the individual copartners as to the disposition of the proceeds of lands bought by one of the copartners in whole or in part with partnership funds, but not used for the purposes of the copartnership, as in *Richards* v. *Manson*, 101 Mass. 482, and *Fall River Whaling Co.* v. *Borden*, 10 Cush. 458 ; sometimes where the existence of the copartnership was in dispute and not clearly established, as in *Smith* v. *Burnham*, 3 Sumn. 435.

If we adopt the English doctrine as laid down in *Dale* v. *Hamilton*, 5 Hare, 369, the defendant's claim that this mill, thus occupied and used by the copartnership, and partly paid for with partnership funds as appears by the partnership books, should be regarded as partnership property in winding up its affairs is at once clearly established. In the case just cited the doctrine to be gathered from a review of all the cases is declared to be that where a copartnership is proved, though but by word of mouth,

the equitable consequences follow and partnership equities attach, the statute of frauds notwithstanding, the case being held to be that of a trust arising by implication of law, and so within the exception expressed in the statute.

Attention is called in the elaborate and learned opinion of Cushing, J., in *Fall River Whaling Co.* v. *Borden, ubi supra,* to the fact that in *Dale* v. *Hamilton* the partnership alleged was in a single transaction of the purchase and sale of land, "standing on parol merely, unsupported by any general partnership subsisting, or any collection and combination of general partnership writings and acts, and with no pretense of any partnership funds, either contemporaneously existing or subsequently acquired."

It is not necessary for the decision of this case to inquire whether we could go so far as the Vice Chancellor did in *Dale* v. *Hamilton,* or whether its doctrine is practically denied in *Farnham* v. *Clements,* 51 Maine, 426.

A verbal agreement to form a copartnership for the purpose of trading in land, whether generally or in a single instance, presents a different question as to the attaching of partnership equities to land bought in pursuance of such agreement by one of the parties and conveyed to him individually, from that which is presented where the existence of a copartnership is admitted by the parties respectively in bill and answer, and the land in question has been used for partnership purposes rent free during the entire existence of the partnership, and more or less of the money of each of the partners and of the partnership funds has been expended in paying for and improving it.

Touching interests in lands acquired for the purposes of the partnership by one partner in his own name see *Forster* v. *Hale,* 3 Ves. 308, and Lord Loughborough's opinion in the same case on appeal, to the effect that "the partnership being established by evidence by which a partnership may be proved, the premises necessary for the purposes of the partnership are by operation of law held" for all such purposes.

In *Smith* v. *Tarlton,* 2 Barb. Ch. R. 336, it was held that real estate purchased with partnership funds for the use of the firm, although the legal title is in the members of the firm in whose

names the conveyance is taken, is in equity considered the property of the firm, for the payment of its debts and for the purpose of adjusting the equitable claims of the copartners as between themselves. And this was a case where a parol agreement for a partnership to carry on a certain kind of manufactures, and to that end to purchase a water privilege and site and erect buildings was proved; and those members of the firm in whose names the title to the real estate was taken were endeavoring to misappropriate the property.

As to the effect of the statute of frauds in these cases it is obviously a matter of no practical importance whether the requirements of the statute are complied with by such a memorandum or declaration in writing, as it calls for, or whether the case falls within the recognized exception of trusts arising by implication of law. "In either view of it," remarks Cushing, J., (10 Cush. 471,) "the question recurs, what proof of copartnership shall suffice to satisfy the demands of the statute." It is generally understood that if the articles of copartnership are in writing, there is a sufficient compliance with the requirements of the statute to subject the partnership lands to all the equities growing out of that relation. Why is not the admission by the parties of the existence of the partnership upon the record in bill and answer a full equivalent?

Here are written recognitions of the fact of its existence subscribed by the respective parties and so placed before us that the existence of a partnership in the present case, so far as these parties are concerned, is indisputable.

In *Smith* v. *Burnham*, 3 Sumn. 435, cited by the court in *Farnham* v. *Clements*, 51 Maine, 428, the partnership asserted in the bill was repudiated in the answer, and it did not appear that there were any partnership funds or any land used for the purposes of the copartnership, and there was no proof offered of any dealings between the parties as copartners except the alleged verbal agreement to form a copartnership for the purchase and sale of lands on speculation, the case in many respects resembling that of *Dale* v. *Hamilton, ubi supra.* Yet while Judge Story found no sufficient proof of the existence of a copartnership and

nothing to satisfy the requirements of the statute of frauds, he did not dispose of the case without a distinct declaration that had it been proved that part of the purchase money of the land had been paid by the plaintiff, or that the land had been purchased for partnership purposes with the funds of an existing partnership, he should have recognized a resulting trust arising by operation of law within the exception of the statute.

Cushing J., in *Fall River Whaling Co.* v. *Borden*, 10 Cush. 475, thus states the doctrine derived from an examination of the whole subject : " A partnership satisfactorily proved, and certainly if proved by writings, is to be held as raising in equity a partnership trust in partnership lands whatever the state of the legal title. If such writings of the copartnership refer directly to the land by name as partnership property, then the trust is proved by the statute memorandum ; if the writings do not by name refer to the land, then it is a trust therein by implication of law."

The various *indicia* of partnership property in this grist mill, (which was the seat of the partnership business) to which we have referred and which need not be recapitulated, satisfy us that it ought, in equity, as between these partners, to be so regarded. We cannot doubt that it was understood by and between the parties when they went into copartnership, that the previous verbal contract for the sale of the mill by the plaintiff to the defendant should be treated as abandoned by mutual consent, and that the purchase of the mill should be completed for and on account of the copartnership, the sums paid and expended by the parties severally up to that time to be regarded as so much contributed to the partnership funds.

" When the legal title is held by one partner in excess of his beneficial interest, it is held in trust for the purposes of the partnership, and is chargeable in equity with all obligations growing out of that relation," says Wells, J., in *Shearer* v. *Shearer*, *ubi supra*.

What the actual condition of things in regard to indebtedness of the partnership to third parties or to the partners individually may require as to the disposition of the property, will depend upon future developments in the case.

In *Buchan* v. *Sumner*, 2 Barb. Ch. R. 165, while it was held that real estate purchased with partnership funds or for the use of the firm is in equity chargeable with the debts of the copartnership and with any balance which may be due from one copartner to another upon the winding up of the affairs of the firm, yet a court of equity will leave the legal title undisturbed except so far as is necessary to protect the equitable rights of the several members of the firm and those of the partnership creditors therein.

The only decree that we are called upon at present to make is that the affairs of the partnership shall be closed up and the relation of the several partners as debtors to, or creditors of, the firm shall be ascertained, and that the mill property conveyed to the plaintiff stand charged with all partnership equities, its disposition to depend upon the respective beneficial interests which the partners may be found to have therein upon the settlement of all the partnership accounts.

*Decree to be framed accordingly.*

APPLETON, C. J., WALTON, VIRGIN and LIBBEY, JJ., concurred.