Smith, C. J.
This is a proceeding in error seeking the reversal of a judgment of the court of common pleas affirming the order and judgment of the probate court, refusing on a second application made for that purpose, to admit to record therein an authenticated copy of the last will of Robert Barr, deceased, alleged to have been admitted to probate and record in West Moreland county, Pa., October 22, 1822. The first application which had been made to the probate court, had also, on the evidence taken, been refused by that court, and its judgment was affirmed by the court of common pleas and such judg *442 ment of affirmance by this court. A statement of the facts of that case and the decision of the court may be seen in 2nd Circuit Court Reports, p. 387.
After this decision a new application was made to the probate court to admit the same will to record. The court again allowed the defendants in error to become parties to such proceeding and to' resist it, and an answer was filed by them, which among other things alleged, that the decision of the court on the first application was final and a bar to a second application — and the record was pleaded. The plaintiff in error denied that there was any such ¡judgment which operated as a bar to the second application, and produced a large amount of testimony in addition to that which had been taken on the first application. At the close of the testimony for the plaintiff in error, the court declined to hear any testimony from those resisting the application, except upon the question of res judicata, and the former record being produced, the court held that it operated as a bar to a second application., which judgment, as has been said, was affirmed by the court of common pleas, and the only question now before us is, whether that adjudication was right.
It is settled, we think, by the decisions of the supreme court, that prior to the adoption of the constitution of 1851, and the laws thereafter passed, on this subject, that the application of a person'to the court of common pleas, sitting as a court of probate, to admit a will to record, was ex parte and not adversary in its character. And it was the statement of the court in several cases, involving the powers and practice of the court of common pleas, as a court of probate, that if its action was to admit the will to probate and record, “it binds everybody until set aside,” but, that if the application was rejected, it might again be made upon fuller proof. Chapman's will, 6 Ohio, 149, 502; Hunter's will, 8 Ohio, 18. And we think we .are not at liberty, as claimed by the counsel for the defendants in error, to regard these parts of the decisions referred to as obiter dicta, and therefore not authoritative. They were made by three different judges, announcing the conclusions of the court in cases fairly raising the point of practice, — were not then dissented from by any member of the court as then consti *443 'tuted — were never questioned in any subsequent decision of the court, and doubtless thereafter such was the settled practice of the courts of the state, as it had been before.
Has the new constitution or the laws passed since its adoption made any change in this particular ? We see nothing in the constitution which at all affects this question, though such seems to be the view of one of the counsel for the defendants in error. Sec. 5934, Rev. Stat., nowallowsjan appeal to be taken from the refusal of the court to admit a domestic will to probate. We held in the case formerly presented to us, that this did not authorize an appeal from the refusal of the court, to admit to record in this state, under the provisions of sec. 5937, “authenticated copies of wills executed and proved according to the laws of any state or territory of the United States, relative to any property in the State of Ohio.” There being an appeal now allowed underjsec. 5934 from the refusal of the court to admit to probate a domestic will, it might be a question whether, if under such circumstances an appeal is not taken, the judgment is not final — but as to this we express no opinion — but if we were right in our former decision that there is no appeal from an order made, under sec. 5937, refusing to allow such a will to go to record in this state, there would seem now to be the same reason for allowing a new application on other and fuller proof, that existed at the time the decisions referred to were made.
It is urged upon us, however, with much force, that on account of the mode of proceeding adopted in the former application (as well as in this), the probate court having allowed persons claiming an interest in land said to be devised by this will (on their own application and against the objection of those producing the will for record), to become parties ¡to such proceeding, and offer testimony against the record of the will, that it thereby became an adversary proceeding, and subject to all the rule s which govern such cases, and consequently¡that the order of the probate court refusing to admit the will to record was a complete bar to the successful prosecution of the last application.
The question then arises whether the probate court had the right to allow these parties to intervene for this purpose, and *444 if allowed, what was the effect of it ? Under the head of ‘‘ General Provisions,” in the chapter regulating the proceedure in probate courts, secs. 6400 to 6413, appears sec. 6406, which it is claimed gives such right and converts a proceeding of this kind into an adversary action. It provides “ that when notice of any proceeding in a probate court shall be required by law, or be deemed necessary by the probate judge, and the manner of giving the same shall not be directed by statute, the probate judge shall order notice of such proceedings to be given to all persons interested therein, in such manner and for such length of time as he shallgdeem reasonable.”
Independently of this statute we see nothing in the law which would require us to hold that an application to admit a will to record under section 5937, Rev. Stats., is nol now as much an ex parte proceeding as it was under the statutes in force when the Ohio decisions above referred to were made. And even now the policy of our statute seems to be adverse to having controversy between parties in the probate court over the admission of a will to probate — for by section 5926, as construed in the Hathaway case, 4 Ohio St. 383, no person is authorized to offer evidence in that court in opposition to the probate of a domestic will. It is true that in our opinion this does not expressly apply to applications under section 5937, but it is perhaps an indication of the policy of the law. It may be, that as the legislature has not seen proper to say, that the same rule shall prevail in applications under this last-named section as in the case of a domestic will, that it rests in the sound discretion of the probate judge whether it will allow persons interested to be heard on the question, and thus aid him in coming to a proper conclusion as to what disposition he should make of the application. There may be good reasons why such should be the case, but we are unable to find any express warrant in the statute for such practice. For we are of the opinion that section 6406 was hardly intended to apply to a case of this kind, or at all events was not intended to convert it into an adversary proceeding if the probate judge choses to give notice of the application to such persons as he may think to be interested. That the object and purpose of this section was to give to the judge the right to fix the man *445 ner of giving notice in cases where it is required by law, and no specific mode is pointed out, and give such notice in oases where the law does not absolutely require it, but in which it rests within the discrection of the court. And there are cases of this kind. For instance in the granting of injunctions under section 5573-4-5. In all these cases the judge may require notice, and must do so, when an answer has been filed. In the appointment of receivers under section 5587, as to which the statute does not in terms require notice, but which should be given, as held in 37 Ohio St. 649, and in many other cases which might be named. And in our opinion, should an application be made to the probate judge for an injunction, or for the appointment of a receiver, or what is more, like the case at bar, for the appointment of an administrator for an estate, and in either case it be refused, that it would not be a bar to a second application on other proof. It would seem to us to be carrying the doctrine of res judicata to an extent unauthorized by the law, to so hold. If it depends on the giving of notice by the judge to the parties in interest, how is he to know who are interested? No petition is filed by the applicant, and no statement made by him as to the persons who will be affected if the will is admitted to record. -Or, if the judge notifies only one or two persons, when many others are equally interested, what is the result of an order refusing the record? Is it binding as to those notified, and of no force as to those who are not ? It would seem that there are too many difficulties in the way of holding such an order to be a bar to a second application, to justify us in coming to such a conclusion.
S. T. Orawford, for plaintiff in error.
Lincoln, Stephens & Lincoln, and S. A. Miller and Qowan & Ferris, for defendants in error.
We are of the opinion, then, that the former judgment was not a bar to this second application, and that the probate court and the court of common pleas erred in holding that it was; and the judgments are reversed, and the cause remanded to the probate court for a hearing on the application and for such other proceedings as may be warranted by law.