FRANK E. EYESTONE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6463.   Promulgated July 9, 1928.

*Charles A. Smith, C. P. A., Vincent A. Smith, C. P. A.,* and *Albert A. Jones, Esq.,* for the petitioner.

*P. M. Clark, Esq.,* for the respondent.

OPINION.

SIEFKIN: The sole question to be decided in this proceeding is whether the income from the sale in 1919 of certain oil royalty interests and oil runs was taxable to the petitioner alone or to the petitioner and his three sons in equal shares.

The petitioner contends that a partnership composed of himself and his three sons was formed in 1912, within the meaning of section 218 (a) of the Revenue Act of 1918, that the sons each had a one-fourth interest in the land and business, and that each is taxable upon one-fourth of the income from the sale of the oil interests.

The evidence discloses that the petitioner had acquired in his own name, between 1889 and 1912, three tracts of land and had built a house upon one of the tracts called the Bush land. In the early part of 1912 the house upon the Bush land burned down and the petitioner was contemplating purchasing another farm, known as the Page place. At that time he entered into an oral agreement with his three sons, who were all under age, whereby each was to receive a one-fourth interest in the land and the business of petitioner. The sons were to remain upon the land, devote their time and labor to the business, and were to share the profits and losses of the business. There was a bank account in the Peabody State Bank in the name of the petitioner, and by the agreement the sons were authorized to draw upon this account. The evidence discloses, however, that both before and after the agreement the sons drew checks upon this account.

At the time of the agreement there was a mortgage of $5,000 upon the farms. After the agreement was made the Page place was purchased for $12,000, in the name of the petitioner. The house upon the Bush land was rebuilt for $6,000, and two silos were erected upon the Page place for an approximate cost of $1,000. The sons, during the years 1918 and 1919, worked in the oil fields and their money received from this source was deposited in the account in the Peabody State Bank and at times they drew checks upon the account signing the name of the petitioner. They also executed some notes in their own names for money borrowed from the bank. The petitioner consulted them upon all business matters including the sales of oil interests, and in one instance one of the sons negotiated the sale of an oil royalty interest. No salary was ever paid to the sons, but whenever money was needed by any of them or the petitioner for business or for personal use, money was withdrawn from the account in the Peabody State Bank.

1236

In *Berthold* v. *Goldsmith*, 24 How. 536, 541, the Supreme Court says:

Partnership is usually defined to be a voluntary contract between 2 or more competent persons, to place their money, effects, labor and skill, or some one or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them. But partnerships and community of interest, independently considered, are not always the same thing; for the first, as between the partners themselves, is founded upon the copartnership agreement which prescribes the relation they bear to each other, and of itself creates the community of interest; but the last many exist, notwithstanding there has been no agreement between the parties.

In *Nancy J. Ryman*, 5 B. T. A. 1288, an oral agreement was entered into in 1907 between the father and three sons, two of whom were under age, to conduct a cattle business. A bank account was carried in the name of the father and the eldest son, and checks of any of the parties to the agreement were honored by the bank. In 1918 one of the sons managed a company in which the father and sons owned a one-sixth interest and his salary was paid over to the family account. In 1919, real estate was purchased with notes signed by the father and son and title was taken in the name of the son, who, a few months later, sold the property at a profit. The property was purchased with partnership funds and the profit was reported in 1919 partnership return. In 1918 the younger son made a contract and bond in his own name to do some grading. Partnership tools and teams were used and the profit received by him was reported as profit of the partnership for the year 1918. It was held that an ordinary common-law partnership existed between the father and his sons during the years 1918 and 1919.

From all the evidence in the instant proceeding we are of the opinion that during the year 1919 there existed an ordinary common-law partnership composed of the petitioner and his three sons.

There is no doubt that under the law of Kansas oil leases are interests in land. *Robinson* v. *Smalley*, 171 Pac. 1155; *Houston* v. *Cox*, 103 Kans. 75; and *White* v. *Green*, 103 Kans. 405.

In the case of *Marsh* v. *Davis*, 3 Kans. 326; 6 Pac. 612, the court uses the following language:

* * * It is also well settled " that parol testimony is admissible to prove a resulting trust in relation to real estate, and that land purchased in the name of one partner, for the use and benefit of the firm, raises a resulting trust which will be enforced." Story, Eq. Jur. §§ 1206, 1207; *Scruggs* v. *Russell*, 1 McCahon, 39.

These principles are applicable to this case and decisive against the defendants. When the plaintiff was taken into the partnership of W. E. Davis & Co., on March 12, 1875, as the firm was then in existence, and in the possession of real estate purchased for partnership purposes, and then appropriated to those purposes, such real estate was partnership property, and the plaintiff, by acquir-

ing an interest in the partnership by verbal contract, and thereafter having acted under the contract as one of the partners, with the consent of all the members, is not to be deprived of his interest in the partnership, either as to the personal property or real estate, on account of the statute of frauds. The cases establish that a partnership in any branch of trade or business may be shown by parol as an existing fact, and that whatever real estate is held for the purposes of such business is regarded as an incident thereto, and the law will imply a trust in favor of the partnership, however the lands be held in law.

\*    \*    \*    \*    \*    \*    \*

We think it is immaterial whether the real estate in this case was bought with partnership funds, for partnership purposes, after the formation of the partnership, or whether a part of the real estate was put into the firm as partnership property at the formation of the new firm on March 12, 1875, if the parties have acted on the agreement and become partners. In such case, the statute of frauds ceases to be applicable. *Smith* v. *Tarlton,* 2 Barb. Ch. 336; *Bissell* v. *Harrington,* 18 Hun. 81.

See also *Edwards* v. *Brinkerhoff*, 116 Pac. 222.

In the case of *Tenney* v. *Simpson,* 37 Kans. 363; 15 Pac. 187, where three parties entered into a parol agreement for the purchasing of land with the view of selling it, the court stated:

\*  \*  \*  Besides, the transaction in the present case was a partnership transaction, and in such cases real property may usually be considered in nearly the same manner as personal property; and the real intention of the parties with reference thereto, their contracts, promises, or mutual understandings, will govern without reference to whether they have been reduced to writing or not. *Marsh* v. *Davis*, 33 Kan. 326, 6 Pac. Rep. 612; *Morrill* v. *Colehour,* 82 Ill. 619; *Knott* v. *Knott*, 6 Or. 142; *Collins* v. *Decker*, 70 Me. 23; *York* v. *Clemens,* 41 Iowa, 95; *Clark's Appeal* 72 Pa. St. 142. In such cases the statute of frauds and kindred statutes have no application.

In 2 Story, Eq. Jur. § 1207, the following language is used: " In cases, therefor, where real estate is purchased for partnership purposes and on partnership account, it is wholly immaterial, in the view of a court of equity in whose name or names the purchase is made and the conveyance is taken, whether in the name of one partner or of all the partners, whether in the name of a stranger alone, or of a stranger jointly with one partner. In all these cases, let the legal title be vested in whom it may, it is in equity deemed partnership property not subject to survivorship, and the partners are deemed the *cestuis que* trust thereof."

See also *Goodrich* v. *Wilson*, 188 Pac. 225.

In *Sarbach* v. *Sarbach,* 122 Pac. 1052, decided by the Supreme Court of Kansas in 1912, the court said:

The proposition that real estate shown to have been used and treated as partnership assets should be so considered, regardless of any writing, is well settled. *Johnson* v. *Clark*, 18 Kan. 157; *Winkfield* v. *Brinkman*, 21 Kan. 682; *Tenney* v. *Simpson*, 37 Kan. 352, 15 Pac. 187; (and other authorities cited).

The respondent contends that the doctrine that real property held by a partnership is considered as personalty and that the statute of frauds is not applicable thereto, applies only as among the members

of the partnership and cites the case of *Carothers* v. *Alexander,* 12 S. W. 4, a case decided by the Supreme Court of Texas.

However, we have no doubt that under the rule of property laid down in the cited cases any one of the parties to the agreement in the instant proceeding could have recovered his proportionate share of the property and proceeds of the business in an action in the courts of Kansas. We are not primarily concerned as to who holds the legal title to the property from which the income is derived, but as to determining to whom the income accrues. We must hold that in 1919 the petitioner and his sons comprised a partnership, that the income derived from the sale in that year of oil royalty interests and oil runs accrued in equal shares to the petitioner and his three sons, and that the respondent erred in holding to the contrary.

*Judgment will be entered under Rule 50.*