WALTER D. RICHARDS *vs.* BENJAMIN H. MANSON & another.

One of two partners, distillers, made a contract in his own name (which was not the name of the firm) to buy land in a distant state, voidable at the option of the sellers upon his failure to pay at the specified time any instalment of the contract price; and, after making some payments in whole or in part out of the partnership funds, suffered several instalments to become overdue and unpaid. In proceedings in insolvency then begun against the firm, the same assignees were appointed of the joint and separate estates of the partners; and these assignees made a composition with the sellers of the land, by which the latter, waiving any right to a forfeiture, conveyed to them one half of the land and gave up the contract, on receiving payment of the balance necessary to make with the prior payments one half of the full contract price, which balance the assignees paid, without the knowledge of either class of creditors, out of the assets of the joint estate, and with the intention of applying first for the benefit of the joint creditors the land so obtained. In a suit in equity to charge this land in the hands of the assignees with liability first for the separate debts of the partner who made the contract, *Held*, that it was so chargeable, in the absence of evidence of fraud or of any agreement of the partners that it should be regarded as property of the firm.

BILL IN EQUITY, filed February 12, 1868, against the assignees of the joint and separate estates in insolvency of John Felton and George Jacques, both of Boston, lately copartners as distillers under the firm of John Felton & Company; alleging that the proceedings in insolvency which resulted in the assignment

to the defendants were begun in the court of insolvency for Suffolk, upon the petition of the insolvents, on February 3, 1859; that the plaintiff proved a debt of $10,735 against the separate estate of Felton; that Felton, at the date of said petition, was entitled to the conveyance, as of his separate property, of certain lands in Chicago; that the defendants afterwards received a conveyance of said lands to themselves as assignees, and of right were holding them for the benefit of the separate creditors of Felton, but were wrongfully claiming to hold them, and threatening to sell them, for the benefit of and to make distribution of the net proceeds among the joint creditors of John Felton & Company; and that, on the plaintiff's application to the court of insolvency to order the defendants to sell the lands, to the end that the plaintiff's rights might be determined upon the filing of the assignees' accounts, the judge, after a hearing, was willing to pass such an order, but, with the assent of the plaintiff and at the request of the assignees, the order was stayed, under their agreement with the plaintiff " that his rights in the premises might be determined previously with the same force and effect as if said lands were first reduced to money." The prayer was, that the defendants might be directed so to marshal the assets from the lands, when sold, as to apply the proceeds of the sale first towards the payment of Felton's separate debts. The defendants filed an answer on which issue was joined; and the case was reserved by *Ames,* J., on the bill, answer and evidence, for the determination of the full court, and is stated in the opinion.

*W. S. Leland,* for the plaintiff.

*C. T. Russell,* for the defendants.

Colt, J. The plaintiff, as creditor of the separate estate of John Felton, asks that the defendants, assignees of the joint and separate estates of the partnership of John Felton & Company, may be directed to appropriate the net proceeds of certain lands in Chicago, held by them as assignees, first towards the payment of the separate debts which have been proved against the separate estate of John Felton, because such proceeds, it is alleged, are assets of his separate estate.

The business of the firm, from the time of its formation to the insolvency, was that of distillers, and was carried on in Boston. It is not claimed that the partnership ever engaged in other outside business, except so far as it may be alleged in the answer that the transactions by which this real estate was obtained were the transactions of the firm. After its formation, John Felton, as an original contracting party in one contract, and by assignment from Jacob P. Eastman, an original party in another, became interested in two written contracts, made with the trustees of the Chicago Land Company, for the conveyance of certain land, the title to which was in said trustees. Certain payments were required to be made at stated times, by the terms of these contracts, and were declared to be conditions precedent, time being of the essence of such condition. In default of such payments, the contracts were to be void at the election of the trustees, and all prior payments forfeited.

These instruments in form vested the legal interest in John Felton individually. The partnership is nowhere named. Large payments were in fact made upon them, but at the time of the insolvency several instalments required by each contract were in default.

Upon this state of facts alone, there can be no doubt that whatever interest the assignees may realize, after paying advances made by them, would belong under these contracts to the separate estate of John Felton ; to be first applied, according to the provisions of the Gen. Sts. *c.* 118, § 109, to the payment of his individual creditors.

The assignees insist, however, that, under the peculiar circumstances of this case, the proceeds of this real estate should be treated as assets of the joint estate.

1. It is said that the interest in these contracts, though standing in the name of Felton, originally belonged to the firm, and was contracted for in his name for convenience. If such were the fact, equity would impress a trust upon the proceeds, and require their distribution as joint assets in insolvency. The basis of this equitable lien or trust is to be found in the intention and agreement of the partners, express or implied.

Thus real estate purchased out of partnership funds, and applied to partnership purposes, and treated by the partners as part of the partnership stock, is to be held in trust for the firm so long as the partnership account is unsettled and the partnership debts unpaid. The agreement between the partners, that it shall be considered partnership property, may, in the absence of express agreement, be implied from the circumstances of the purchase and the conduct of the parties. But the mere fact that land is bought with partnership funds is ordinarily not sufficient, where the conveyance is made to one only, and the property is never used for partnership purposes. There must be satisfactory evidence of an appropriation of the property to the use of the company for the purpose of making it a part of the stock in trade. To this there is the exception always, that the members of the partnership will not be permitted fraudulently to convert the property of the firm into private property for the purpose of depriving the joint creditors of their rights, and in contemplation of insolvency. *Dyer* v. *Clark*, 5 Met. 562.

The defendants, to sustain their position in this respect, must bring themselves, upon the facts, within the scope of these principles. Without going into the evidence, or the reasons which influence us in determining this and the other questions of fact which arise in the cause, it is sufficient to say that no express agreement of the partners that these contracts should be considered the property of the firm appears. And though it be conceded that the money paid on them was wholly or in part drawn from the partnership funds, yet there is no evidence that it was so appropriated with the purpose of making them the property of the firm, or at least none which should control the positive evidence of both partners to the contrary. 1 Am. Lead. Cas. (4th ed.) 481.

2. It is claimed that these contracts, at the time of the insolvency, had become forfeited by a failure to make the required payments, and, if otherwise, that there were no funds in the hands of the assignees, belonging to the separate estate of Felton, which could be used to complete the payments; and so the assignees, with the funds of the joint estate, and for the use of

the joint creditors, and by the inducement of having these contracts, proceeded to buy these lands, the proceeds of which in equity should belong to the joint estate. In reference to this claim, it is unnecessary to inquire whether, if the trustees of the land company had so elected, they could under the terms of the agreements have enforced a forfeiture of the prior payments, and terminated them. It is plain from the evidence that they did not so elect, but on the contrary consented to convey one half of the real estate named, and give up the contracts, upon a payment by the assignees of the balance necessary to make, with the prior payments, one half of the full amount which was to have been paid. To this extent, at least, the existence and validity of the contracts was recognized and acted upon by both parties. It is to be considered, too, that without such a settlement and termination of these contracts the estate in the hands of the assignees would have been subject to the payment of dividends upon the amount which it was in the power of the trustees to prove as a debt arising under them. Under these circumstances, the assignees availed themselves of the prior payments which made part of the consideration of the conveyance, and, borrowing for the time the funds of the joint estate, made the settlement and took the deed. They do not come in as purchasers of the land by a title independent of the contracts. The whole case for the defence proceeds on the ground that the land is held by the assignees as assets of the estates which they are administering in insolvency. Deriving title in this way, it cannot be seriously contended that the use by the assignees of the funds of the joint estate without the knowledge, so far as it appears, of either class of creditors, raises an equity in favor of the joint and to the prejudice of the separate creditors in the proceeds. The assignees could not by any act change the nature of these contracts so as to make the interest in them assets of the joint or separate estates at their option. They were trustees for the separate as well as the joint creditors, and the character of the assets, as they existed at the time of the insolvency must continue unchanged. The use of the joint funds cannot be treated as investments by the assignees, the profits of which

or any portion of which, are to go to the joint creditors. In addition to the reason already given, it would seem to be practically impossible to apportion such profits between the two estates.

We find nothing in the case to justify the inference that John Felton employed the funds of the partnership in bad faith, in this transaction, and with a purpose to deprive the joint creditors of their priority in the company assets. The creditors have no equity to prevent partners from transferring their property to each other, or of changing its character from joint to separate property, provided it is done in good faith. *Howe* v. *Lawrence,* 9 Cush. 553. *Harmon* v. *Clark,* 13 Gray, 114.

3. To constitute an implied or resulting trust in favor of the copartnership on the ground of the payments made, it must appear that they were made for the purpose of making the purchase by the firm and for its use. The payments or advances must have been made before or at the time of the purchase, for it is said the trust arises out of the circumstance that the money of the real and not of the nominal purchaser formed at the time the consideration of the purchase, and became converted into land. The trust, says Chancellor Kent, in *Botsford* v. *Burr,* 2 Johns. Ch. 405, results from the original transaction at the time it takes place, and at no other time ; and it is founded on the actual payment of the money, and on no other ground. It cannot be mingled or confounded with any subsequent dealings whatever. And it was held in *Forsyth* v. *Clark,* 3 Wend. 638, 651, that, if one of two partners buys in his own name, and gives his own bond and mortgage, and afterwards pays out of the partnership funds, a resulting trust will not be thereby created unless it unequivocally appears that there was an agreement at the time of the purchase that the funds should be so appropriated. All trusts of this description, as they arise from equitable presumption, may be rebutted by parol evidence that it was the intention of the parties that the person to whom the conveyance was made should take for his own benefit. Upon the facts as we find them in the case at bar, the defendants fail, in our opinion, to establish an implied or resulting trust in favor

of the partnership. *Dyer* v. *Dyer*, 1 Lead. Cas. in Eq. (3d Am. ed.) 257.

4. The strong equity which it is said exists in favor of the partnership estate by reason of the indebtedness of Felton to the firm, cannot be permitted to defeat the distribution in insolvency which the statute declares shall be made of these assets. The rule given is simple, easy of application, and in the large majority of cases promotes substantial justice. Like all general rules, it sometimes works harshly, but it would be unwise to disregard its provisions in order to meet the apparent hardships of particular cases, or to create exceptions to it in the delusive hope of meeting the equitable considerations that may be urged in every case. *Somerset Potters' Works* v. *Minot*, 10 Cush. 592. *Harmon* v. *Clark*, 13 Gray, 115.     *Decree for the plaintiff.*