Kingsland *v.* Kingsland.

MARGARET KINGSLAND and MARTHA L. KINGSLAND

*v.*

MARGARET E. KINGSLAND, executrix of Joseph Kingsland, second, deceased.

[Submitted August 4th, 1900.   Decided August 23d, 1900.
Filed February 11th, 1901.]

1. Where testator bequeathed horses and cows to his daughters, and charged real estate devised to two sons, with pasturage for the animals, and the daughters filed a bill against the executrix of one of the sons to establish a liability against her and charge the land with the pasturage, the living brother was a necessary party to the bill, though it alleged an agreement between the brothers whereby one should provide for the horses and the other for the cows, which agreement had been kept by the living brother.

2. The deceased brother having devised all his land to his executrix for life, with remainder to his children, no decree could be made, binding on the land beyond the lifetime of the executrix, without the devisees in remainder being made parties.

3. Where testator bequeathed horses and cows to his daughters, and charged real estate devised to his sons with hay and pasturage for the animals, and the daughters filed a bill against the executrix of one of the sons to establish a liability against her, and to charge the land devised with the pasturage, no decree could be made, where the bill failed to allege that any particular land sought to be charged was in the possession of the executrix.

4. Where testator's will bequeathed to his daughters two cows and two horses, and provided that his sons should furnish hay and pasturage for the animals, and charged lands devised to the sons with such provision, testator not having any cows at the time of the bequest, it was not a specific bequest, and hence the daughters were entitled to have hay and pasturage furnished for any two cows and two horses they might possess.

Heard on bill and answer.

*Mr. Peter Bentley,* for the complainants.

*Mr. Joseph Coult,* for the defendant.

PITNEY, V. C.

The complainants, Margaret and Martha Kingsland, are two of the children and beneficiaries mentioned in the will (dated December 3d, 1869) of Joseph Kingsland, first, who died April 26th, 1878, leaving three daughters and two sons, namely, Richard and Joseph Kingsland, second, the latter being the defendant's husband and testator.

The object of the bill is to establish a liability against the defendant individually and as executrix of her husband, and to fasten the same upon the lands of the first testator in the hands of the defendant as executrix of her husband and tenant for life.

The basis of the claim is a clause in the will of Joseph Kingsland, first, in these words:

"I give and bequeath to my two daughters, Margaret and Martha, my homestead where I now reside, comprising my dwelling-house, with the barn, garden and orchard adjoining; also all my household and kitchen furniture and articles of housekeeping: also two horses, two of my best carriages, and two cows, *for and during their natural lives.* I also give them the use of the stables and carriage-house, for the purpose of keeping the said horses and cows, as long as they shall require them; and I hereby direct my two sons, Joseph and Richard, to provide hay and pasture for *said* horses and cows during the lives of my said daughters, and I hereby charge the real estate hereinafter devised to them with the provision of the same."

It will be seen at once that whatever personal liability there may be is one resting upon the two sons, Joseph and Richard, jointly.

In the absence of some contract of partition or division of this liability which shall be binding upon both the defendant and the complainants, Richard Kingsland is a necessary party to this suit. As a reason, apparently, for not making him a party the bill alleges that after the death of the first Joseph it was mutually agreed between Richard and Joseph, second, that Richard should furnish the pasturage and hay for the two horses, and that Joseph should furnish the hay and pasturage for the two cows which the complainants owned or possessed. There is no allegation that the complainants assented to and became parties to that agreement; but the allegation is that Richard has performed his part of the agreement to the satisfaction of the

complainants. It further alleges that the defendant's testator, Joseph, performed his part of the agreement until the year 1895, when he declined to further perform it, and died in the year 1899 testate of a will, of which the defendant is the sole executrix.

The defendant, by her answer, denies all knowledge of any such agreement between the two brothers, and as the case is heard on bill and answer without any proofs whatever, I am unable to see how this defect of parties is cured. But the defendant makes no point based on that ground.

The will of Joseph, second, after providing for the payment of his debts and funeral expenses, gives, devises and bequeaths to his wife, the defendant Margaret, the use, enjoyment and income *during her life* of all of the residue of his real and personal estate, with power of sale, and to invest and reinvest the principal and the proceeds of sales, and also power to make division of portions of principal and interest among his children if she feels disposed so to do, and at her decease he gives all his estate to his children then living and the issue of any who may have predeceased him leaving heirs, and appoints his wife sole executrix.

No decree can be made which shall bind any lands beyond the lifetime of the defendant, without the devisees in remainder being made parties.

Further, there is no direct allegation which ought to be the basis of judicial action that any particular tract of land of the first testator remains in the possession of the defendant. The following is all that the bill alleges in that respect: "That said defendant is still possessed of a large tract of land of the property of Joseph Kingsland, deceased."

The answer does not help the complainant in this respect.

The theory of the bill is that the effect of the above clause in the will is to give the complainants a right of actual pasturage for their horses and cattle on, and the right to gather hay from, the lands of the testator which came to his two sons, Richard and Joseph; and the prayer is that the defendant shall be restrained from preventing complainants pasturing their cows on lands, and from preventing complainants gathering hay on lands.

This, presumably, is the. ground for coming into this court, and of an application which was made for an injunction based upon affidavits annexed to the bill. This application was not pressed; and the affidavits, of course, will not be considered.

I am unable to adopt this view as to the proper remedy, but am of the opinion that the decree, if any be made, must be for payment of a sum of money annually, which will be sufficient to pay for the pasturage and the hay for two cows, and a declaration that that amount is a standing charge on the lands; and, of course, that decree cannot be enforced without a description of the lands to be affected thereby.

These matters show that it is, probably, impracticable to grant the complainants any relief under the bill as at present framed.

But the defendant took no point as to that, and the parties seem to desire the opinion of the court as to the construction of the clause above quoted. Here, again, the court has no help from any statement in the bill or answer as to the circumstances which surrounded the testator at the time of the making of the will or at his death. It is not stated that he had any cows, horses or carriages. The answer, indeed, does say that Richard and Joseph, the sons,

"did furnish hay and pasturage for the two horses and two cows bequeathed to the complainants and *selected by them* for their use during their lives, and continued to give them the use of the stable and carriage-house for the purpose of keeping said horses and cows as long as the said horses and cows *taken by the said complainants under the provisions of the said will continued to exist, and that all the said horses and cows had died and were no longer in existence prior to the year eighteen hundred and ninety-five.*"

But there is no allegation that the horses and cows were chosen out of those which the first testator had at the time of his death.

The full meaning of the clause in question is not of easy determination. The clear intention of the testator was that the complainants should have the use of two cows and two horses and hay and pasture for them during the lifetime of his said daughters. The use of the words "for and during their natural lives" after the gift of the horses, carriages and cows, and, again, of the words "during the lives of my said daughters" after the

provision for the keep of the animals, puts this beyond debate. Here, again, the age of the daughters at the time of his decease is not given, so that we have not their then probabilities and possibilities of life. But the fact that they are still alive is some proof that their expectation of life was good for many years.

The argument of the defendant is that the use of the word "said" before the words "horses and cows" in the clause confines the provision for keep to the identical horses and cows given by the testator, and at the death of those horses and cows the liability ceased.

I am unable to yield to that argument. It assumes that the testator must have entertained the notion that his daughters, in the ordinary course of human affairs, would not outlive the domestic animals which they might acquire under his will. This is contrary to common knowledge. Assuming, as we must, that the complainants were quite young at the date of the making of the will in 1869, I am unable to infer that the testator, at that time, supposed that, after allowing for his own probable life, his daughters would not live longer than the horses and cows which they would receive under his will.

Again, this argument of the defendant assumes that the horses and cows so given were specific legacies of horses and cows to be chosen out of testator's own stock. There is nothing in the pleadings to show that the testator owned any horses or cows at the time of his death, or that if he did own any, that the horses and cows of which the complainants became possessed were chosen by them from the stock which the testator had at the time of his death. But if that fact did appear, it seems to me that, under all the authorities defining specific bequests, this bequest of horses and cows cannot be held to be specific.

It will be observed that the usual earmarks which were relied upon in the early authorities to render bequests of chattels of this character specific are wanting here as to the horses and cows. We do not find the adjective "my" or other word of distinction prefixed to "horses" and "cows," as *my* horses, and *my* cows; while in the same gift the word "my" is applied to carriages. The words are—"two horses and two cows." Not "two of my horses and two of my cows." This omission in the case of

the horses and cows in the same sentence in which it is used in connection with "carriages" is significant.

I do not propose to go into the authorities on this subject. The older ones will be found collected in Chancellor Green's opinion in *Norris* v. *Thomson's Executors, 1 C. E. Gr. 218* (at *pp. 221, 222*), and in *1 Rop. Leg. 191,* and *2 Wms. Ex. (R. & T. ed. of 1895) 436.* It is true that the decree made by Chancellor Green in *Norris* v. *Thomson's Executors* was reversed on appeal under the peculiar facts of that case; but the authorities cited by the chancellor and his definition of a specific bequest were not impugned.

Among the later definitions of a specific bequest is one by Jessel, master of the rolls, in *Bothamley* v. *Sherson, L. R. 20 Eq. 304* (at *p. 308*), where many later cases are cited. And later, in *Robertson* v. *Broadbent, 8 App. Cas. 812* (at *p. 815*), Lord Selborne defined a specific legacy as follows: "Something which a testator, identifying it by a sufficient description, and manifesting an intention that it should be enjoyed in the state and condition indicated by that description, separates in favor of a particular legatee from the general mass of his personal estate." To the same effect is the definition given in *Giles* v. *Melsom, L. R. 6 H. L. 24.*

I am of the opinion, then, that the bequest of the horses and cows was not a specific bequest, but was one which gave the complainants a right to have two good horses and two good cows purchased for them with money of the estate, in the absence of any held by the testator at his death answering that description; and that in using the word "said" in connection with the horses and cows the testator did not have in mind any particular horses and cows which he might own at the time of his death, but merely the horses and cows which the daughters were to have under his will. It is true that the will does not provide that the horses and cows so given should be renewed at the expense of the estate from time to time during the lifetime of his daughters, the complainants. But it seems to me that the absence of such a provision in the will is not sufficient to overcome the clearly-expressed intention that the hay and keep should be provided during the lifetime of the complainants. This provision seems

to me, by necessary implication, to include in the provision horses and cows however acquired.

Taking the clause in question as a whole, I think the better opinion is that the provision was not confined to the first horses and cows which the complainants acquired under the will, but that it was a continuing provision, applying to any which they should acquire, not exceeding two of each, during their lifetime.

CHARLES SCHULTZ

v.

HUGO F. WALDONS.

[Submitted September 24th, 1900.   Decided October 12th, 1900.
Filed February 11th, 1901.]

Where there was no previous partnership or joint enterprise between the parties, and they agreed by parol that defendant should purchase and take title to land in his own name, and hold it for the joint benefit of both, and plaintiff contributed no money to the enterprise, the contract was within the statute of frauds, requiring agreements relating to land to be in writing, and plaintiff could not recover any interest in the land without written proof of the contract.

On motion to set aside decree dismissing the bill, and for a rehearing on the ground of newly-discovered evidence.

*Mr. Edgar H. Loveridge,* for the motion.

*Mr. Albert Leuly, contra.*

PITNEY, V. C.

The bill in this cause was filed for the purpose, first, of obtaining an account of cash profits derived by the defendant from the purchase of two lots of land in West Hoboken, the erection of two houses thereon and the sale thereof, and a decree that the