## LOGAN v. LOGAN.
### No. 5051.

Court of Civil Appeals of Texas. Amarillo.
July 3, 1939.

Rehearing Denied Sept. 11, 1939.

Underwood, Johnson, Dooley & Wilson, of Amarillo, and Tatum & Tatum, of Dalhart, for appellant.

B. N. Richards, J. B. Honts, and Art Schlofman, all of Dalhart, and Adkins, Pipkin, Madden & Keffer of Amarillo, for appellee.

FOLLEY, Justice.

This is the second time this cause has been before this court. Our former opinion may be found in 112 S.W.2d 515. The appellee, E. V. Logan, was the plaintiff in the trial court. The appellant, Ida Logan, was the defendant. E. V. Logan, also known in the record as Vannie Logan, is the son of Eugene Logan, deceased, by the latter's first wife. Ida Logan was the second wife of the deceased and the sole beneficiary under his will except for nominal sums bequeathed to the children of the first marriage. The first wife of the deceased lived in Young County, Texas, and was divorced from Eugene Logan in 1906. There were no children of the second marriage which occurred April 13, 1912. The deceased died in May, 1935.

This suit involves the claim of E. V. Logan to a one-half interest in all the property standing in the name of Eugene Logan at the time of the latter's death. The claim was based upon an asserted partnership existing between E. V. Logan and his father in Dallam County, Texas, from 1902 until the death of Eugene Logan in 1935. We refer to our former opinion for a detailed statement of the basic facts which were about the same upon both trials. The chief distinction the present record bears to the former is that the case now before us is more fully developed, apparently in an effort to overcome the deficiencies pointed out in our former opinion. Having made an extended discussion of the facts in our first opinion we deem it necessary to add to such statement only such variations from the former record as are evident in the instant appeal.

The appellee recovered substantially the same judgment in' the second trial as in the first, however, in the record now before us the judgment was based upon the verdict of the jury. The findings of the jury which we deem material to the present controversy were substantially as follows: (1) That on or about the latter part of May, 1902, Eugene Logan and his son, E. V. Logan, entered into a partnership agreement, whereby they were to engage in the feeding of cattle, in the livery stable business and in the purchasing and acquiring of property in and around Dalhart for their joint use and benefit; (2) that it was agreed by the partners that Eugene Logan was to take title in his own name to such real estate as was purchased for the use and benefit of the partnership; (3)

that it was agreed in 1902 that Eugene Logan was to have the right to send certain moneys received from the partnership business to Young County, and counties other than Dallam, to pay upon certain properties owned by him, and certain indebtedness owed by him, and for the support of his family in Young County; (4) that it was agreed between Eugene Logan and E. V. Logan that any moneys the former might receive as salary or compensation as a representative of the Cattle Raisers' Association should be placed in the partnership business to offset such moneys as Eugene Logan should send to Young County or other counties for the purpose of paying obligations Eugene Logan owed on said lands in such counties, and for the support of his family; (5) that the parties agreed that the remaining properties, if any, from the partnership business should be owned by the partners equally; (6) that there were profits from such partnership; (7) that pursuant to such partnership agreement Eugene Logan did, from the proceeds of the business, acquire houses, vacant lots and acreage in and around Dalhart, taking title thereto in his own name for the use and benefit of the partnership; (8) that the income from such partnership property was reinvested from time to time by Eugene Logan from the latter part of May, 1902, until the death of Eugene Logan on or about May 9, 1935, in other property acquired and held by Eugene Logan for the use and benefit of the partnership; (9) that the profits from the sale of said partnership property were reinvested from time to time by Eugene Logan from the latter part of May, 1902, to May 9, 1935, in other property acquired and held by Eugene Logan for the use and benefit of the partnership; (10) that as to those properties bought or improved by borrowed money it was the intention of the said Eugene Logan that they should become part of the assets of the partnership; (11) that from the date the partnership was formed until the death of Eugene Logan, the latter managed and looked after the property of the partnership for the mutual benefit of himself and E. V. Logan; (12) that the property sold by Eugene Logan from the formation of the partnership until his death was sold for the benefit of the partnership; and (13) that at the time of his death Eugene Logan held all the property described in the inventory of his estate for the use and benefit of the partnership.

In addition to the above findings, upon specially requested issues, the jury further found: (1) That from April 13, 1912, to December, 1927, the Grand Hotel, operated by Eugene Logan and his wife, Ida Logan, produced a net income of $266 per month, which income became a part of the Eugene Logan bank account; (2) that the monthly rental value of such hotel for the same period was $30 per month; (3) that the sum of $4,300 had been advanced to Eugene Logan by the appellant, Ida Logan, from her separate estate; (4) that the various properties acquired or improved after Eugene Logan's second marriage, including properties designated as the Scott Motor Company, the B. & B. Café building, the Fain store building and the Dean Bakery building, were not purchased or improved with the intention simply that they should belong to Eugene Logan and the appellant as husband and wife; (5) that any money borrowed in the purchase or improvement of such property was not with the intention simply that said moneys should be repaid by Eugene Logan and Ida Logan as husband and wife; and (6) that the active partnership in the purchase of real estate between E. V. Logan and Eugene Logan did not terminate at or before the marriage of Eugene Logan and the appellant on April 13, 1912.

Upon the above verdict the court rendered judgment for the appellee for title and possession of an undivided one-half interest in and to all the property held by Eugene Logan at the time of his death of whatever description, but took cognizance of the $4,300 advanced by the appellant from her separate funds by making proper offsets in regard to the division of the cash on hand so as to repay the appellant such sum. The court did not take cognizance, however, of the net earnings of the Grand Hotel which sum, less the rental value of the hotel building, aggregated about $43,000 during the period between April 13, 1912, to December, 1927, which action upon the part of the court forms the basis of one of the complaints in this appeal.

The first assignment of the appellant is that the evidence is insufficient to support that portion of the verdict of the jury finding that a partnership existed between E. V. Logan and his father, Eugene Logan. The testimony on this issue was more fully developed than upon the former trial. In this discussion we shall not recite the testimony which we

reviewed in our former opinion but shall add to that statement only the additional testimony in this trial which was not in the former record. Suffice it to say that each witness who testified in the second trial, who gave testimony in the first, did not retract any of his former testimony. The testimony of the appellee and his wife, Margaret Logan, was substantially the same as upon the former trial, except that it is a great deal more specific in this trial. Without again reviewing the testimony of E. V. Logan it is our opinion it is sufficient in itself to form the basis for the jury's findings if the same has sufficient corroboration from other witnesses. In our former opinion our holding that the testimony was insufficient on this issue was based chiefly upon the fact that the appellee was an interested witness, that there were some circumstances creating suspicion upon his testimony, and that his evidence was without sufficient corroboration, at least with reference to the existence of a partnership after the second marriage of Eugene Logan in 1912.

In this trial the witness, John Logan, also a son of Eugene Logan, gave additional testimony to the effect that he was in Dalhart in 1925 and then heard his father declare in the presence of Henry Boyce that he (Eugene Logan) had bought about twenty houses which were to be Ida Logan's portion of the holdings and that the remainder of the property would be left to E. V. Logan. He also testified that his father stated he desired to keep the interest of the properties intact. Art Sneed testified that he had seen E. V. Logan working around the feeding pens at Dalhart, Texas, Santa Rosa and Logan, New Mexico and that he had seen E. V. Logan working on houses in Dalhart. Ed Reeves testified that he saw E. V. Logan working at the stock pens with Eugene Logan in Dalhart; that when Eugene Logan was not present E. V. Logan gave the orders and directions for the work; that he knew Eugene Logan had acquired a number of pieces of property in and around Dalhart; and that he had seen E. V. Logan working on these houses. John Schroeder testified that in 1905 or 1906 Eugene Logan desired him to do some work on a windmill but stated that he would have to see E. V. Logan about it; and that Eugene Logan later stated to the witness that he and E. V. Logan had talked the matter over and arrangements had been made for the witness to do the work. Mrs. Caledonia Lee, who came to Dalhart in the latter part of 1905, testified that when she first came to Dalhart Eugene Logan was running a hotel and operating the stock pens; that after the witness became acquainted with Eugene Logan she heard him talk about the Dalhart property; that he stated that he and E. V. Logan owned about forty-five rent houses; and that she had a conversation with Eugene Logan wherein the latter referred to the fact that E. V. Logan was working on "our houses". Mrs. Martha Jones testified that in 1903 she rented a house from Eugene Logan; that she heard Eugene Logan say that he and E. V. Logan were partners in everything; and that she had heard Eugene Logan make such a statement many times. W. A. Ketchum added to his testimony in the former trial the fact that in 1914 he heard Eugene Logan make the statement that E. V. Logan was "in with him" on his affairs at Dalhart.

Mrs. Addie Dallas testified that she had lived in Dalhart since 1906; that Eugene Logan came to her place for meals and inquired about E. V. Logan, stating that he desired him to paper a house; that the witness inquired as to what Eugene Logan paid E. V. Logan for the work, and Eugene Logan replied: "Van and I are partners in the business. I don't pay him any wages"; that while Eugene Logan was mayor of Dalhart the witness discussed with him the purchase of a house and the latter stated he would talk it over with E. V. Logan, his partner in the business, and let her know; that when he returned with a proposition he stated he had talked the matter over with E. V. Logan; that about this same time Eugene Logan stated that as they collected money from rent they purchased other property with it; and that the conversations in regard to the purchase of the house occurred the last year that Eugene Logan was mayor of Dalhart. The record shows that he was such mayor from 1924 until 1931. J. F. Adams testified that he came to Dalhart in 1915; that he became acquainted with Eugene and E. V. Logan shortly afterward; that the witness did the janitor work at the Midway Bank Building; that at the time the improvements on the Scott Motor Company property were made (1923) he heard a conversation between Eugene Logan and Henry Boyce in which Mr. Boyce mentioned a note or mortgage; that Eu-

gene Logan then said, "There is no need of that" and that "If I give you a mortgage Van will have to sign it".

Without extending further our discussion of the testimony upon the issue in question, we deem it sufficient to state that in our opinion the above new evidence, together with substantially the same testimony as appeared upon the former trial, is ample to corroborate the testimony of E. V. Logan as to the formation of the partnership and as to its continuance until the death of Eugene Logan. It is our further opinion that the testimony as a whole in the present record is sufficient to sustain all of the above findings of the jury in regard to the existence and duration of the partnership.

■ The next chief complaint of the appellant is to the effect that, granting there was a partnership, the appellee wholly failed to sustain the burden of tracing the partnership funds into the property against which the trust is sought to be established.

The appellees introduced in evidence a list of all properties acquired by Eugene Logan from 1902 until 1930, which list describes the properties by lot and block, showing the names of the grantors, the date of the purchase, and reference to the Deed Records of Dallam County. This exhibit also shows conveyances of these properties from year to year by Eugene Logan with the same particularity as to description. The appellee testified as to these properties item by item, beginning with the first purchases in 1902 and extending on down through the list, identifying the properties by location and the names of the tenants or purchasers with a great deal of particularity. The testimony is very definite and certain as to the acquisition of the various properties. It is equally certain that the rents, revenues, incomes and proceeds of every sort from the properties went into the hands of Eugene Logan and were by him placed in the one and only bank account that Eugene Logan ever had. It was from such sole bank account funds that all the additional properties were acquired. It is therefore our opinion that the testimony is sufficient to discharge the burden of proof with reference to the ownership of the property in question and to sustain the findings of the jury relative thereto.

The appellant contends that by reason of the above finding of the jury in regard to the income from the operation of the Grand Hotel, and the further fact that this income, amounting to approximately $43,000 over the fifteen and a half year period, became a part of the Eugene Logan bank account, the appellee did not sustain the burden of tracing the trust funds into the partnership property, and thus, by reason of such alleged defect, the appellant was entitled to a judgment at least in so far as the properties acquired after April 13, 1912, were concerned.

■ In this connection it should be stated that the appellant, in her pleadings with reference to the alleged partnership, merely denied that such partnership existed. In the event a partnership was established she did not seek an accounting, did not seek to impress a trust or preference lien upon the partnership property on account of any advancements made from the community estate, and did not seek any affirmative relief against the partnership property by reason of the alleged community earnings of herself and her deceased husband, which passed into the partnership bank account. In this appeal the appellant merely interposes such matter as a barrier to appellee's tracing the partnership funds into the property involved. It was the contention of the appellee all through the present record that all of the property acquired by Eugene Logan from 1902 until the latter's death was purchased for the partnership from partnership funds and held in the name of the deceased for the use and benefit of the partnership. The proof supports his contention in this respect and the verdict of the jury completely establishes it. The jury not only found that all of the property was acquired for the use and benefit of the partnership, but went a step further and found that the property acquired after the second marriage was not obtained with the intention that it should belong to the community estate of the appellant and the deceased. Such findings, having some support in the evidence, constituted an inferential finding, at least, that the partnership agreement and understanding excluded any claim to a community estate upon the part of the appellant and Eugene Logan. The latter having the full custody of such community fund, and, in the absence of fraud, empowered by law to manage and dispose of it as he saw fit, no matter how strange it may seem, it is not inconceivable that such understanding was

a part of the partnership agreement. At least, the jury so found, in effect, after hearing all the testimony, and we are bound by such finding under the present state of the record. As we view this matter a prima facie case was made that a partnership existed in which each of the partners shared equally in all the property acquired in the name of Eugene Logan from 1902 until 1935. For the appellant to overcome this presumption it was incumbent upon her to establish a greater interest in the property in question than a one-half portion. This burden she failed to discharge, which fact, we think, is fatal to the assignment now under consideration.

The appellant presents several assignments with reference to the manner of submitting the special issues in this case which assignments, in effect, charge that the issues were on the weight of the testimony, that they impelled jury findings favorable to the appellee and that they were not specific enough as to the various properties. We have carefully examined the court's charge in the light of such assignments and, due to the voluminous record in this case, we deem it sufficient to say that the charge, in our opinion, is not subject to the objections raised.

Although the appellant has presented 111 propositions based on an equal number of assignments of error, we think what we have said disposes of the material and controlling issues in the case, and, further, that no error has been presented in any of the assignments herein.

The judgment of the trial court is affirmed.