## MRS. IDA LOGAN V. E. V. LOGAN.

No. 7669. Decided October 29, 1941.
Rehearing overruled December 10, 1941.
(156 S. W. 2d Series, 507.)

41

*Tatum & Tatum,* of Dalhart, *Underwood, Johnson, Dooley & Wilson,* of Amarillo, and *Black, Graves & Stayton,* of Austin, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the plaintiff and his father had entered into a general, unlimited partnership agreement, under which plaintiff was to have a half interest in all the property acquired by his father until his death, irrespective of the source of the funds used to purchase such property, as such partnership agreement was not attempted to be proven nor was such an agreement submitted to the jury. American Natl. Ins. Co. v. Briggs, 90 S. W. (2d) 602; Jones-O'Brien v. Lloyd, 106 S. W. (2d) 1069; Sinclair Oil Co. v. Costin, 116 S. W. (2d) 894.

*B. N. Richards, J. B. Honts* and *Art Schlofman,* of Dalhart, and *Adkins, Pipkin, Madden & Keffer, of Amarillo,* for defendant in error.

The testimony as a whole is sufficient to sustain the finding of the jury that a partnership existed and that it continued to exist until the death of plaintiff's father. Schlesinger v. Kennerly, 41 S. W. (2d) 1002; Willis Mercantile Co. v. Moody, 77 S. W. (2d) 308; Hines v. Sparks, 146 S. W. 289.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

The plaintiff in the lower court, E. V. Logan, brought this suit against his step-mother, Mrs. Ida Logan, to establish a partnership trust in one-half of all the property left by his deceased father, Eugene Logan. A judgment for plaintiff was affirmed by the Court of Civil Appeals at Amarillo (131 S. W. (2d) 1048), and defendant, Mrs. Ida Logan, sued out a writ of error.

According to the evidence and the findings of the jury, in about the year 1888 Eugene Logan left his first wife and family in Young County and went West, finally settling in Dalhart sometime before 1902. In that year (1902) plaintiff, E. V. or "Van" Logan, one of the sons of Eugene Logan, was on his way to Oregon and stopped in Dalhart to see his father, who was then engaged in the business of feeding cattle for the Rock Island Railroad and running a livery stable. At his father's request said E. V. Logan stayed in Dalhart and entered into a partnership agreement with his father, whereby they were to engage in the feeding of cattle, in the livery stable business, and in the purchasing and acquiring of property in and around Dalhart for their joint use and benefit. They agreed that the profits from the business should be invested and reinvested in property in and around Dalhart, and that all property so acquired should be held for convenience in the name of Eugene Logan; although both would be equally interested therein. Plaintiff immediately went to work with his father around the feed pens, and continued in that work until the contract with the railroad company expired in 1906. He worked without salary, and withdrew only his necessary expenses. The business prospered, and Eugene Logan, the father, began to buy and sell houses and vacant lots in the city of Dalhart. Plaintiff worked on these various pieces of alleged partnership property, painting and

papering the houses and keeping them in repair. He operated the Grand Hotel, one of the pieces of property alleged to belong to the partnership, from 1908 until the hotel was closed in 1909. Eugene Logan, the father, was divorced from his first wife in 1906, and made a property settlement with her. The business of feeding cattle and the livery stable business in which they were alleged to be partners appear to have been discontinued about the year 1906. Apparently no other partnership business was carried on thereafter, except that the father continued to buy and sell property in and around Dalhart; and it is contended by the son, E. V. Logan, that this business was carried on with partnership funds for the use and benefit of the partnership until the death of the father in 1935. In 1910 the plaintiff, E. V. Logan, went to work for a transfer company in Dalhart, and from that time until his father's death in 1935 he was continuously engaged in independent employment, and devoted no further time to the alleged partnership business. During all this time, from 1910 to 1935, he was paid a salary by his various employers, which salary was used for his own use and benefit, and no part of it was contributed to the partnership. Eugene Logan, the father, left a will by which he devised to each of his eight children, including E. V. Logan, the sum of $10.00, and all of the remainder of his property to his wife, Ida Logan, naming her as independent executrix.

The plaintiff, E. V. Logan, brought this suit against Mrs. Ida Logan, to recover a half interest in all of the property held in the name of Eugene Logan at the time of his death, alleging that the partnership which began in 1902 had never been terminated, and that all property on hand and in the name of the father at the time of his death had been acquired in whole or in part with partnership funds, and with the intention that it should become a part of the assets of the partnership, and that by reason thereof it was impressed with a trust in favor of the partnership.

It was contended by E. V. Logan that his father never had any other income other than that which came from the partnership business. However, the record shows that when Eugene Logan, the father, married the defendant, Mrs. Ida Logan, on April 13, 1912, he and his said wife reopened the Grand Hotel, one of the pieces of alleged partnership property, and operated it continuously thereafter until December, 1927; and the jury found that the net profits from this undertaking, over and above the operating expenses and rental value of the property, ex-

ceeded $44,000.00. The jury also found that the defendant, Mrs. Ida Logan, in the meantime advanced to her husband, out of her own separate estate, the sum of $4,300.00. All of these funds,—the advancements made by Mrs. Logan, the profits from the hotel, and the income and profits from the real property held in the name of the father and alleged to belong to the partnership,—were kept in the same bank account; and all operating and living expenses, as well as investments, were paid out of the same account.

The jury found that Engene Logan at the time of his death in 1935 held all the property described in the inventory of his estate in his name, for the use and benefit of the partnership. In accordance with the findings of the jury, the court allowed Mrs. Logan, out of the cash on hand in the bank in her husband's name, the sum of $4,300.00 in repayment of the advancement previously made by her, and decreed that the remainder of the property in the name of Eugene Logan at his death was subject to said trust, and awarded one-half thereof to the plaintiff, E. V. Logan. Mrs. Logan appealed.

The Court of Civil Appeals seems to have proceeded on the theory that the partnership arrangement was such that the father could never carry on any private business of his own, but that whatever business was afterwards carried on by him would necessarily be treated as partnership business. From this the court seems to have concluded that all of the assets on hand and in the name of the father at the time of his death constituted partnership assets. However, neither the pleadings, the evidence, nor the findings of the jury were to this effect. According to the finding of the jury, the parties were to be partners in the business of feeding cattle for the railroad, in the livery stable business, and in the purchasing of property in and around Dalhart. As hereinbefore stated, the jury also found that the father and his wife did actually engage in another business, one not covered by the partnership agreement—the operation of a hotel—and that they made a net profit therein of over $44,000.00. This profit, together with the advancement of $4,300.00 made by Mrs. Logan for the benefit of the community estate, was deposited in the same bank account out of which subsequent investments were made.

While there was evidence to show, and the jury found, that that father and son entered into the partnership arrangement as alleged; that it was understood that the partnership property

and the income therefrom should be carried in the name of the father; and that the partnership actually profited,—there was no evidence to show the amount of the profits, nor was there any evidence to show that any of such profits went into or were used in the purchasing of any particular piece of the property that was on hand at the time of the death of the father; except that there was evidence that all funds received from the partnership undertaking were deposited in the common bank account with other funds, at least a part of which belonged to the community estate, and that investments were made out of the same account. Since the property here involved was so purchased and paid for out of the common bank account, it becomes material to determine who had the burden of proof in distinguishing the partnership assets from the remainder of the community assets of Eugene Logan and his wife.

■ It is a general rule that where a trustee wrongfully mixes trust funds of an indeterminable amount with his own private funds, the burden is on him to distinguish his funds and the amount thereof from those of the cestui que trust; and if he cannot do so the whole comingled fund, or the property purchased therewith, becomes subject to a trust in favor of the cestui que trust. 42 Tex. Jur., 740; 65 C. J., 972, 978; 11 Amer. Jur., 529; 12 C. J., 491; Bogert, Trust & Trustees, Vol. 4, p. 2677; Andrews v. Brown (Com. App.), 10 S. W. (2d) 707; Meyers v. Baylor University, 6 S. W. (2d) 393 (writ refused).

The rule is analogous to that of confusion of goods. Andrews v. Brown, supra. It is a harsh one, but is justified by the wrongful conduct of the trustee. The emphasis is on the injustice of requiring an innocent beneficiary to distinguish and trace the trust funds when the commingling was occasioned by the wrongful act of the trustee. It is expressed in Andrews v. Brown, supra, as follows:

"The principle, we apprehend, is but a part of equity's declination to extricate the wrongdoer from self-imposed hard conditions, or to tax the innocent where one of two not in pari delicto must suffer."

On the other hand, there are authorities which hold that if the commingling is done rightfully, and with the consent of the beneficiary, the basis for the rule is removed, and no presumption is raised that the entire fund, or property purchased therewith, is subject to the trust; and consequently the burden

remains on the plaintiff to trace the trust funds into the specific property and to show the amount thereof as one of the essential elements of his case. 12 C. J., p. 491, sec. 3, p. 494, sec. 8; 11 Amer. Jur., 529 to 532; Brown v. Bacon, 63 Texas 595; 15 C. J. S. 969; Brighouse v. Morton (Canada), 3 Dom. L. R. 91 (1929); Dimity v. Dixon, 74 Cal. App. 714, 241 Pac. 905; In re Arm's Estate, 186 Calif. 554, 199 Pac. 1053; Agnew v. Agnew, 67 Colo. 81, 185 Pac. 259; Gonzales v. Illfeld, 25 N. M. 608, 185 Pac. 1110.

Perhaps the rule last above announced should be qualified to the extent that where the proof necessary to distinguish the fund lies exclusively within the possession of the trustee and he refuses to make disclosure of such facts as he has at his command, the presumption should be indulged in favor of the cestui que trust.

In the case at bar there was no *wrongful* commingling of the funds by the father. According to the plaintiff's testimony, the partnership funds and assets were to be carried in the name of the father. This was with his express consent. The trustee is dead, and consequently there is no wilful failure to make a disclosure on his part. It is true that Mrs. Logan, to the extent that she is defending as a devisee under his will, stands in his shoes; but she is not here solely as a devisee under her husband. Her share of the community estate has been commingled with the partnership assets. She is no more at fault for the commingling of the funds than is the son. Under these circumstances, the rule applicable to a wrongful commingling is inapplicable.

The inequity of the rule here contended for by E. V. Logan, as applied to the facts of this case, is readily apparent. Here E. V. Logan labored with his father as a partner from 1902 until 1910, and then went his way for twenty-five years, contributing nothing more to the partnership, and using his own earnings exclusively for his own benefit. On the other hand, the father not only continued to operate the partnership business for the use of the firm; but, according to the findings of the jury, he and his wife operated a hotel as a nonpartnership enterprise, and from the fruits of their labors therein produced and placed in the same bank account with the partnership assets a sum in excess of $44,000.00. If such rule should be here applied, the son, merely by virtue of the fact that he was a partner in the partnership business, would receive one-half of

the income from all sources, including that received from the hotel and all other nonpartnership enterprises in which Mrs. Logan and her husband were engaged for a period of twenty-three years.

■ We hold that the son, by virtue of the fact that he is the plaintiff in the case, has the burden of tracing the partnership funds into the specific property claimed by him to be firm assets, and of showing the proportionate amount thereof used in purchasing same; or of showing that the specific property claimed by him to be partnership property was purchased for the use and benefit of the firm. This requires a reversal of the case, because he did not meet this burden on the former trial. He did prove that partnership funds went into the bank account and that funds from the same account were used in purchasing property. But, as said before, funds from nonpartnership enterprises went into the same account, and the plaintiff failed to show what part of the fund was partnership property and what part was the private property of Eugene Logan, and failed to show that only the partnership portion of the fund was used in buying the property here under consideration.

■ The only issue submitted to the jury for the purpose of determining whether all of the assets covered by the judgment were subject to the trust asserted by the plaintiff was as follows:

"Special Issue No. 19.

"Do you find from the preponderance of the evidence that Eugene Logan, at the time of his death on or about May 9th, 1935, held the property described in the Inventory of the Estate of Eugene Logan, Deceased, in his name for the use and benefit of said partnership, if any?"

To which the jury answered, "Yes."

This issue erroneously placed on the jury the burden of determining the trust character of each piece of property, without a preliminary determination of the essential facts necessary to make it trust property, and without any instruction as to what would be essential in that respect. It submitted on one question both the law and the facts, without any instruction to the jury as to how to apply the law to the facts. The issue was therefore improper.

At the time Eugene Logan, the father, purchased certain pieces of property here involved he borrowed the money for the down payment from a third party, giving his note therefor, and gave his note to the vendor for the balance of the purchase price. The jury found that at the time the property was so purchased it was the intention of Eugene Logan that said property should become a part of the assets of the partnership. Mrs. Logan raises the contention that the title to the property could not be controlled by the mere intention of her husband, but that said property having been bought on his individual credit, it necessarily became his property and not that of the firm.

■ Ordinarily the question as to whether a particular piece of property belongs to a trustee or to the cestui que trust depends on whose funds were used, or intended to be used, in purchasing it. Spencer v. Pettit, 2 S. W. (2d) 422, 425; Id. 34 S. W. (2d) 798; 20 R. C. L. 854, sec. 61; Gleich v. Bongio, 128 Texas 606, 99 S. W. (2d) 881. However, this is not the sole citerion, especially in determining whether the property is that of a partnership or the private property of one of its members. According to Mechem, if the land was bought with private and not partnership funds this would ordinarily suggest that it was the private property of the individual whose money was used in purchasing it; but there might be circumstances to indicate that the amount of the purchase money was intended as a loan or as an advancement to the firm or to permit the firm to use the property upon terms that had been or might be mutually agreed upon. Mechem's Elements of the Law of Parnership (2d Ed.), p. 137. Likewise, there might be circumstances indicating that it was intended to take the place of firm assets previously used by the member of the firm for his own private use. As said in Johnson v. Hogan, 158 Mich. 635, 123 N. W. 891, 37 L. R. A. (N. S.) 889:

"Whether or not land taken in the name of one or more partners is in fact partnership property always depends upon the intent of the parties and the understanding and design under which they acted. It is clear that an express agreement may show this intent; but it may also be established by an implied agreement. This implied agreement may be gathered by considering the general purpose of the parties, the nature of their business, and the manner in which they have dealt with the property in question. See Lindsay v. Race, 103 Mich. 28, 37 L. R. A. (N. S.), 61 N. W. 271, where this court said:

'Whether lands held in the name of one partner or of both are to be deemed copartnership property is generally a question of intent, to be gathered from the manner in which the members of the firm have dealt with them.' In Way v. Stebbins, 47 Mich. 296, 11 N. W. 166, this court said: 'The rule in this state has been well settled that property purchased with a design that it should become partnership property, and actually used in accordance with that design, must be regarded as firm assets.' See also: Richards v. Manson, 101 Mass. 482; Arnold v. Wainwright, 6 Minn. 358, Gil. 241, 80 Am. Dec. 448.''

See also Jones v. Beekman (N. J.), 47 Atl. 71; 20 R. C. L. 857.

Eugene Logan was the manager of the firm and had authority to bind it. When he executed a note as a down payment or for the borrowed money with which to make a down payment on the land in question, he may have intended it to be a firm obligation and to pay it later out of firm assets; or he may have intended to give his personal obligation in lieu of firm assets previously used by him for his own personal benefit. In either of such events the purchase money would have been paid by the parnership. The fact that the deed was taken in the name of Eugene Logan would not alter the case, because the firm business was to be transacted in his name. If the purchase price was to be paid or the money borrowed for the down payment was to be repaid out of the common bank account, it might nevertheless have been Eugene Logan's intention that it should be charged to the firm account. Under the peculiar circumstances of this case it would seem that the question as to whether the property was to belong to the firm would depend on whether Engene Logan so intended at the time he purchased it.

In view of the fact that the case must be remanded for a new trial, we have not examined the record critically to determine whether or not the evidence raised the issue last above discussed.

The judgments of the trial court and of the Court of Civil Appeals are reversed, and the cause is remanded to the trial court for a new trial.

Opinion delivered October 29, 1941.

Rehearing overruled December 10, 1941.