**HAND v. ERRINGTON et al. (No. 325-3671.)**

(Commission of Appeals of Texas, Section A. June 14, 1922.)

**I. Trusts ☞105—Purchase of land with proceeds of sale of community estate held to create a constructive trust in favor of minor child.**

Where a surviving husband purchased land with the proceeds from the sale of cattle belonging to the community estate, a construc-

tive trust was created in the land in favor of a minor child.

**2. Husband and wife ☞273(10)—Sale of community property by surviving husband passes legal title and equitable interest to bona fide purchaser.**

Where a surviving husband sold cattle belonging to the community estate believing that the daughter had no interest therein, the sale passed the legal title, which was in the father, and protected the buyer against the equitable interest of the daughter unless it could be established in a suit between the daughter and the buyer that the buyer was not a bona fide purchaser.

**3. Husband and wife ☞274(4)—Remedies of daughter where surviving husband purchased land with proceeds from sale of community property stated.**

Where a surviving husband purchased land with proceeds from sale of community property, a daughter had the right of election between an action against the purchaser for the amount of her interest, in which event she would have to prove that the buyer was not a bona fide purchaser for value, to treat the sale as a conversion, and to sue the father for the amount of her interest, or to pursue the proceeds so long as they could be clearly identified, and have the property impressed with a trust to the extent of her proportionate interest.

**4. Compromise and settlement ☞23(3)—Evidence held to show that daughter had no knowledge of the extent of her interest in community estate in making settlement with her father.**

In an action by a daughter to establish her interest in land purchased by surviving husband from proceeds of the sale of the community estate, evidence *held* sufficient to show that in making settlement with her father the daughter had no knowledge of her interest in the community estate, and that the settlement was made for her interest in her mother's separate estate.

**5. Descent and distribution ☞82—Failure of surviving husband to reveal status of community property to daughter held to constitute fraud.**

The failure of the surviving ` husband in making a settlement with his daughter for her interest in the community estate to inform the daughter of the true status of the community property amounts to fraud, though the husband was laboring under a mistaken belief as to the rights of the daughter.

**6. Limitation of actions ☞19(3)—In suit to impress land with a trust, only statutes of limitations pertaining to recovery of real estate are applicable.**

In a suit to impress lands with a constructive trust, only statutes of limitations pertaining to actions for the recovery of real estate are applicable.

**7. Compromise and settlement ☞8(4), 16 (2)—Avoided for mistake; settlement does not affect rights not intended to be affected.**

Where surviving husband sold cattle belonging to the community estate and invested

---

the proceeds in lands, and his daughter, not knowing thereof, made a settlement whereby she conveyed to him, in consideration of $1,925, her interest in such lands, and released all her interest to him, which interest was worth $23,-036.36, and the father did not know that the law gave the daughter any rights as inheritor of rights in the community, the settlement was void for mistake, and, in any event, being intended by both parties to release only her right to inherit from him, so as to avoid, in case of his death. conflict with rights of inheritance of his children by a later marriage, would not affect her rights as inheritor of community property.

Error to Court of Civil Appeals of Second Supreme Judicial District.

W. J. Oxford, of Stephenville, and John Hancock and W. B. Powell, both of Fort Worth, for plaintiff in error.

Miller & Miller of Fort Worth, for defendants in error.

SPENCER, P. J. Defendant in error May Errington, joined by her husband, J. C. Errington, instituted this suit to recover a one-half interest in eight separate tracts of land described in the pleadings which she claimed as the sole heir of her mother, Texana Hand, a former wife of plaintiff in error, J. J. Hand. She alleged that the lands in question had been purchased by plaintiff in error with the proceeds of the community estate of J. J. Hand and Texana Hand.

Plaintiff in error answered by plea of general denial and a plea of not guilty, and further pleaded the statutes of limitation and a settlement had with defendant in error, under the terms of which she conveyed to him all of her interest in and to the lands in question and released all of her interest therein to him. In response to special issues submitted the jury found that defendant in error was entitled to $1/22$ interest in three of the eight tracts or $32\ 10/11$ acres, and further that the lease value of this interest, which had been sold to an innocent purchaser without notice of appellee's equity, was the sum of $23,036.36. Judgment was entered in her behalf for this amount.

It is a settled principle of equity that, when the relation of trustee and cestui que trust once arises, it pervades every transaction respecting the trust until it is effectually ended.

[1] It is an equally well established principle of equity that, if the trustee invests the trust fund in other property or converts trust property into money and with the latter purchases other property, the cestui que trust may follow the fund in the new investment so long as he can identify the purchase as one made with the trust fund or its proceeds. Kennedy v. Baker, 59 Tex. 150, 162, 163; Texas Moline Plow Co. et al. v. Kingman Texas Implement Co., 32 Tex. Civ. App. 343, 80 S. W. 1042.

In the present case it is not denied that plaintiff in error, as the community survivor, was the constructive trustee of the community property. It is admitted that he sold the cattle in which defendant in error, as an heir of Texana Hand, had an interest, and with the proceeds thereof purchased the lands in which the jury found that defendant in error has a $1/22$ interest. No attack is made upon the jury's finding as to the extent of her interest, but it is simply contended that she has no interest.

[2] The legal title to the cattle was in plaintiff in error. He was the apparent owner thereof, and sold them believing that defendant in error had no interest therein. The legal title to an interest never at any time vested in defendant in error. Hers was but an equitable title. The sale passed the legal title, which was in plaintiff in error, to the purchaser, and protected the latter against the equitable interest of defendant in error unless it could be established in a suit as between defendant in error and the buyer that the latter was not a bona fide purchaser. Hill v. Moore, 62 Tex. 610; Patty v. Middleton, 82 Tex. 586, 17 S. W. 909.

[3] Defendant in error was not, however, forced to pursue this remedy to the exclusion of the other remedies which the law afforded her. She had the right of election as between the following remedies: (1) An action against the purchaser for the amount of her interest, in which event it would devolve upon her to establish that the buyer was not a bona fide purchaser for value; (2) to treat the sale as a conversion and to sue plaintiff in error for the amount of her interest; or (3) to pursue the proceeds so long as they could be clearly identified, and have the property which the money purchased impressed with a trust to the extent of her proportionate interst. Zundell & Co. v. Gess, 73 Tex. 144, 10 S. W. 693; Perry on Trusts (5th Ed.) vol. 2, p. 168, par. 128; Oliver v. Piatt, 3 How. (44 U. S.) 333, 11 L. Ed. 622.

Granting, however, that the relation of trustee and cestui que trust did not exist, still no different principle applies and no other result could be reached under the facts found. The property of defendant in error was converted by plaintiff in error into another form. This gave rise to a constructive trust. This principle is clearly stated in Pomeroy's Equity Jurisprudence, vol. 3, p. 2397, par. 1051, as follows:

"A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form. If one person having money or any kind of property belonging to another in his hands wrongfully uses it for the purchase of lands, taking

the title in his own name, or if a trustee or other fiduciary person wrongfully converts the trust fund into a different species of property, taking to himself the title, or if an agent or bailee wrongfully disposes of his principal's securities, and with the proceeds purchases other securities in his own name—in these and all similar cases equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrongdoer, but as long as it can be followed and identified in whosesoever hands it may come, except into those of a bona fide purchaser for value and without notice; and the court will enforce the constructive trust for the benefit of the beneficial owner or original cestui que trust who has thus been defrauded. As a necessary consequence of this doctrine, whenever property subject to a trust is wrongfully sold and transferred to a bona fide purchaser, so that it is freed from the trust, the trust immediately attaches to the price or proceeds in the hands of the vendor, whether such price be a debt yet unpaid due from the purchaser, or a different kind of property taken in exchange, or even a sum of money paid to the vendor, as long as the money can be identified and reached in his hands or under his control. *It is not essential for the application of this doctrine that an actual trust or fiduciary relation should exist between the original wrongdoer and the beneficial owner. Whenever one person has wrongfully taken the property of another, and converted it into a new form, or transferred it, the trust arises and follows the property or its proceeds.*" (Italics ours.)

[4] The facts necessary to be noticed in connection with the plea of limitation are that defendant in error was born January 13, 1886, and was married to J. C. Errington June 21, 1903. All of the cattle in which defendant in error had an interest were disposed of not later than 1898—the date of the last purchase of lands by plaintiff in error with community funds. This suit was filed on October 6, 1919. In 1917 there was a settlement between plaintiff in error and defendant in error which resulted in the execution of the release of the latter's interest in the lands in controversy. The Court of Civil Appeals found that it was Hand's avowed purpose in securing this release to have each of his children share alike in his property, and that it was not known to defendant in error when she executed the release that she had an interest in the property by virtue of the investment of community funds therein. That court's findings of fact pertinent to the question of limitation are as follows:

"Appellee had no knowledge of any other interest she had or ever would have in the lands in controversy; appellant giving her no information on the subject. Her community interest, as further found by the jury, was not disclosed by appellant and not ascertained by appellee until a short time prior to the institution of this suit, and it is insisted in behalf of appellee that the silence of appellant in respect to the existence of community property of the first marriage and of the investment of the proceeds thereof in the lands in controversy and of appellee's right thus arising amounts to such fraud as arrested the statute of limitation and authorized a court of equity to disregard the terms of the conveyance last mentioned, and we think these contentions must be sustained." 233 S. W. 567.

The finding of the Court of Civil Appeals as to the discovery by defendant in error of her interest in the land is assailed by plaintiff in error. It cannot, in view of the evidence, be said, as a matter of law, that there is no evidence in support of the finding.

The evidence shows that defendant in error went to live with an uncle soon after her mother died in 1886, and was never thereafter a constituent member of plaintiff in error's family. Plaintiff in error recognized her interest in some horses which she inherited from her mother's separate estate and paid her $10 per year as rental or interest therefor up to the time that she married. Defendant in error testified that she knew that she inherited this property which had been given her mother by an uncle, but she did not know the number of head of horses. When she married, her father gave her $110. She testified that she did not know what this $110 was for, but plaintiff in error testified that it was intended as a settlement of her interest in her mother's estate, although when he gave it to her he made no explanation, because he thought she understood why it was paid to her.

It is easily deducible from this testimony that she did not consider the $110 as a settlement of her interest in her mother's estate, and further that when her husband wrote plaintiff in error in 1907 requesting settlement, and when defendant in error in 1907 discussed settlement with her father, they had reference to a settlement of her interest in her mother's separate property, as this interest was known to them, while her interest in the community was undoubtedly unknown to defendant in error or her husband.

There is very strong evidences tending to show that defendant in error did not discover that her mother had an interest in the cattle, the proceeds of which purchased the lands in controversy, until plaintiff in error's oral deposition was taken. Defendant in error testified that her father told her in 1907 that he lost all of his stock in 1886 or 1887; that it was a very hard winter, and he lost lots of cattle. Plaintiff in error testified that he had not at or previous to the time of the settlement in 1917 made any statements to either defendant in error or her husband with reference to the extent of her interest in the community estate, and that he never made any statements to her about where the money came from with which he purchased the lands. His own testimony refutes the suggestion that defendant in error had knowl-

edge, because of the conversation of 1907, that the proceeds of community property purchased the lands. He alone, it seems, possessed this knowledge, but admits that he did not divulge it.

[5] The failure of the plaintiff in error to reveal the true status of the community property amounted in law to concealment, and concealment is fraud. The fact that he was laboring under a mistaken belief as to her rights under the law cannot purge his silence of its legal fraud.

[6] It is very clear that the basis of defendants in error's suit is to impress the lands in controversy with a constructive trust. This being true, only those statutes of limitations pertinent to actions for the recovery of real estate are applicable. Nuckols v. Stanger (Tex. Civ. App.) 153 S. W. 931; McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315; Stafford v. Stafford, 96 Tex. 106, 70 S. W. 75. The four-year statute of limitation can have no application under the undisputed facts to this case. If it be conceded that it was necessary in order to entitle defendants in error to recover to set aside the deed and release, clearly the four-year statute would be no obstacle to prevent this, because the suit was instituted within four years after the execution of these instruments.

[7] The concealment was sufficient upon which to predicate an action to cancel the release. Both parties entered into the contract in ignorance of defendant in error's rights. Plaintiff in error was laboring under a mistake of law as to defendant in error's rights, and the latter was ignorant of the facts known to plaintiff in error which fixed her rights.

In Perry on Trusts (5th Ed.) vol. 1, p. 26, par. 184, it is said:

"If a party in ignorance and mistake of his rights and interests execute a conveyance, although no fraud is practiced upon him, a court of equity will relieve against the instrument; for it is against good conscience to take advantage of one's ignorance to obtain his property. Thus if an heir, in ignorance of the value of his inheritance, or in ignorance that some legacies or devises had lapsed, should convey his interest for an inadequate consideration, equity would convert the purchaser into a trustee. And if the purchaser should have full knowledge, or should stand in any confidential relation, or should practice the slightest art to mislead or conceal, the equities would of course be much stronger against the transaction; but these circumstances are not necessary to avoid the conveyance, for relief will be granted where both parties are in a mutual state of ignorance, or are laboring under the same mistake."

The fact that plaintiff in error settled with defendant in error on the basis that she was entitled to 190 acres of land, when, as found by the jury, she was entitled to but $32^{10}/_{11}$ acres, does not affect her right to cancel the release for fraud, nor does it support the contention that, because he recognized her right to 190 acres, no injury was done to her. A complete answer to the last proposition is that her interest was acquired for the sum of $1,925 when in fact the value of such interest as found by the jury was $23,036.36. She accepted the value placed upon the land by plaintiff in error. According to her statement, he informed her that he was going to settle with her half-sisters upon this basis. He did not inform her, however, that he had leased the land for oil purposes. She, it seems, was ignorant of the true value of the land and relied upon his statements as to its value. The statements by him amounted to fraudulent representations entitling her to a rescission of the deed. Pomeroy's Eq. Juris. vol. 2, p. 1815, par. 878.

It is doubtful, however, if the execution of this instrument has any effect whatever upon the vital issues in this case. The Court of Civil Appeals has found that defendant in error did not discover that she had an interest in the land until a short time before the institution of the suit. There is evidence, as above pointed out, to support this finding. Plaintiff in error is very emphatic in his statement that a controversy over the community estate was not involved in that settlement. He was asked:

"Is it not a fact that you stated to Mrs. Errington that you were settling with her upon the basis of $10 per acre for the land both as an heir of her mother and prospective heir to your estate?"

To which he replied:

"It was figured at $10 per acre for her inheritance from me, not her mother."

He could not, under the pretense of making an advancement to her, acquire the interest from her mother, when it was not within the contemplation of either of them that he should do so.

It is our conclusion that the judgment should be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.