**HARDIN et al. v. VOLUNTEER STATE LIFE INS. CO. et al.**

No. 13665.

Court of Civil Appeals of Texas. Dallas.

Feb. 22, 1946.

Rehearing Denied April 5, 1946.

Lively, Dougherty & Alexander, of Dallas, for appellants.

Goldsmith & Bagby and Chester M. Fulton, all of Austin, and Donalson, Bullard & Kucera, Hattie L. Henenberg, and Malone, Lipscomb, Seay & Shuford, all of Dallas, for appellees.

LOONEY, Justice.

The events leading to the present controversy, in substance, are these: In June, 1912, Dr. Abell D. Hardin and his wife, Pearl White Hardin, were married and

thereafter lived together as husband and wife until the death of Mrs. Hardin, September 30, 1940. On December 15, 1915, the Volunteer State Life Insurance Company issued its policy in the sum of $5,000 on the life of Dr. Hardin, payable on his death to his executors, administrators, etc.; and on March 18, 1925, issued a second policy in the sum of $5,000 on the life of Dr. Hardin, payable on his death to his father and mother, naming others in succession in case of their death. Later, on December 5, 1933, the insured caused his wife, Pearl White Hardin, to be named primary beneficiary in both policies, their son, Hal White Hardin, as secondary beneficiary, and others in succession. All premiums were paid from the community estate of Dr. and Mrs. Hardin, and the policies were in the status just mentioned, on the death of Mrs. Hardin, September 30, 1940. She died intestate; no administration was had on her estate; none was necessary, as there existed no debts against the community estate. She left surviving, her husband and son, Hal White Hardin, as only heirs. At the time of her death the cash surrender value of the first of these policies was $1,848.44; that of the second policy was $1,448.28.

For about three years after the death of Mrs. Hardin, the son, Hal White Hardin, remained primary beneficiary as previously designated, but on September 3, 1943, Dr. Hardin made his sisters, Hallie Hardin and Idessa Hardin, primary beneficiaries in both policies, share and share alike, the survivor to take; also named others to take in succession in the event of the death of those first named; also caused the policies to be amended so as to provide that the benefits thereunder should be paid in monthly installments.

The policies were in the status just described when Dr. Hardin died, May 10, 1944, leaving a will in which he named Byrd E. White and Hal White Hardin (his son) independent executors without bond. The will was admitted to probate; Byrd E. White qualified as executor, but Hal White Hardin, due to absence in military service, had not qualified at the time of trial.

Hallie Hardin and Idessa Hardin, primary beneficiaries, submitted proof of death and demanded that the proceeds of the policies be paid to them in monthly installments as provided in the policies. At this juncture, Hal White Hardin caused notice to be served upon the insurance company that, as heir of his deceased mother, he claimed one-half the cash surrender value of the policies as of September 30, 1940, date of her death, and demanded payment of that amount from the proceeds of the policies.

In view of the conflicting claims to the proceeds of these two policies, the Volunteer State Life Insurance Company filed this interpleader suit, interpleading all primary and contingent beneficiaries, as well as Byrd E. White, independent executor, and Hal White Hardin, who, as heir of his mother, was claiming one-half of the cash surrender value of the policies. The company admitted liability under the policies, expressed its readiness, willingness and ability to pay the proceeds to whomsoever, and in such amounts, as the court might adjudge; alleged that by reason of conflicting claims, it could not with safety to itself pay out the proceeds to anyone, except as directed by the court; wherefore the suit was brought, interpleading the parties as above named, praying that upon hearing the facts the court determine and adjudge to whom and in what amounts the proceeds of the policies be paid, and that when it shall have complied with the court's decree, it be discharged with its costs and a reasonable attorney's fee.

The beneficiaries named in the policies filed answers, and prayed that upon hearing the facts the court award them the proceeds of the policies as provided therein, and that Hal White Hardin take nothing by reason of his alleged claim or cause of action. Hal White Hardin answered, asserting his claim as heir of his mother to an amount of the proceeds of the policies equal to one-half the surrender value of the said policies as of September 30, 1940, date of Mrs. Hardin's death, and alleged the amount thereof; also asserted his right as a contingent beneficiary as named in the policies. Byrd E. White answered as independent executor, praying the court to establish the respective rights of the parties and the amounts of the proceeds to be paid to them accordingly.

The case was tried without a jury and resulted in judgment in favor of Hallie Hardin and Idessa Hardin, primary beneficiaries, and the contingent beneficiaries, to the effect that they recover the proceeds of the policies to be paid as provided therein; and that Hal White Hardin and Byrd E. White, executor, take nothing, to which

action they excepted, gave notice of and perfected this appeal.

Appellant urges several points of error which we think may be blended and reduced to one question, that is, whether, in view of the undisputed facts and the applicable rules of law, the court erred in denying Hal White Hardin recovery of an amount equal to one-half interest in the surrender value of the policies as of the date of his mother's death.

The statement heretofore given shows that the policies in question were issued after the marriage of Dr. and Mrs. Hardin; all accruing premiums thereon were paid from their community estate; at the death of Mrs. Hardin, September 30, 1940, she was the primary beneficiary named in the policies; their son, Hal White Hardin, named as secondary beneficiary, became primary beneficiary on the death of his mother; and at that time the two policies had a cash surrender value of $3,296.72.

The cash surrender value of an insurance policy is built up and increased from time to time from premiums paid in excess of the amount required to provide life insurance, and constitutes an investment which resembles and is of the nature of a savings account. The policy is of a dual nature; in one aspect it is an obligation of the insurance company to pay the stipulated amount on the death of the insured; in the other aspect it is an investment, pure and simple, obligating the company on surrender of the policy to pay in cash the amount of the surrender value.

The question presented here is: Was the cash surrender value of the policies property (within the meaning of the law) that belonged to the community estate at the time of the death of Mrs. Hardin? The decisions of this State have repeatedly so held. Among the earlier cases bearing upon the subject was that of Martin v. Moran, 11 Tex.Civ.App. 509, 32 S.W. 904, in which the court said: "Where the premiums of an insurance policy on the life of a husband, payable 'as directed by will,' are paid out of the community estate, the wife is, on death of the husband, entitled to one-half the proceeds of the policy, though his will makes the entire proceeds payable to his own estate." Syl. 1. Judge Head, speaking for the court, in the body of the opinion said: "If the contract between the husband and the company had been in the form of a note payable as directed by his will, instead of in the form of

an ordinary insurance policy, it seems to us clear that such note would be property acquired during the marriage by the connubial partnership. That the husband could not use the community property in acquiring contracts of that kind, and dispose of them by will as his separate property, seems too clear for argument." In the more recent case of Locke v. Locke, Tex.Civ.App., 143 S.W.2d 637, the court held that "The 'cash surrender value' of husband's life insurance policy, the premiums on which had been paid with community funds, and which cash surrender value accumulated by reason of payment of amounts in excess of amounts required to provide the life insurance alone, was 'property' of the community estate at time of divorce and wife was, therefore, entitled to an amount equal to one-half of the cash surrender value." Syl. 1. And in the later case of Womack v. Womack, 142 Tex. 299, 172 S.W.2d 307, Judge Sharp, speaking for the Supreme Court, held that "Cash surrender value of policies on husband's life and cash surrender value of policy on wife's life were properly disposed of as 'community property' on divorce of parties, where all policies were obtained during marriage and all premiums were paid from community funds. Vernon's Ann.Civ.St. art. 4619." Syl. 2. Judge Sharp seemingly made an exhaustive examination of the subject, and cited many pertinent authorities. It is important to note that he also used this language: "The rule announced in the case of Whitesell v. Northwestern Mutual Life Ins. Co., supra [Tex.Com.App., 221 S.W. 575], as well as in any other case holding contrary to the rule announced herein, is expressly overruled."

In view of these authorities, we do not think it can be doubted that at the time of her death, Mrs. Hardin owned a half interest in the cash surrender value of the policies, that the same was property and, as such, was inherited by her son and only heir, Hal White Hardin, appellant herein. Clearly it was beyond the power of Dr. Hardin to make any disposition by changing the beneficiaries of the policies, or otherwise, to dispose of or extinguish the interest of appellant in the proceeds of these policies. This doctrine was very clearly announced by Chief Justice Phillips in Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S.W. 1139, 1143. He said: "After her death, the husband may legally convey her interest only for the purpose of paying

community debts. He is wholly without power, after her death, to convey it for any other purpose. This is so because of his want of ownership of her interest and the refusal of the law to recognize any authority in one person to dispose of another's property unless duly empowered."

The right of Dr. Hardin to change beneficiaries in the policies and give away his interest therein after the death of his wife, is not questioned; he certainly had that right, but that was the extent of his power. We do not think the effect of what he did in any way affected, disturbed, or extinguished the right of appellant's inheritance from his mother, as Dr. Hardin was not authorized and could not have given away property that he did not own. Our attention has not been called to any case directly in point, but, with a strong trend in that direction, see McBride v. McBride, 11 Cal. App.2d 521, 54 P.2d 480; also Howard v. Howard, Tex.Civ.App., 158 S.W.2d 591.

■ The court held, in one of its conclusions of law, that appellant's claim to one-half the surrender value of the two policies was not payable out of their proceeds, but "only out of the estate of Abell D. Hardin" (appellant's father). We do not think so; but even if appellant had such remedy, it was not exclusive, and he, and not the court, had the right to choose the remedy to be pursued. We think appellant had the right to prosecute his claim, as he is now doing, against those claiming adversely. See Hand v. Errington, Tex.Com. App., 242 S.W. 722.

■ Appellees contend that the burden was upon the appellant to show that he had not been recompensed from his father's estate for the interest in the policies inherited from his mother. We cannot agree to that proposition; appellees claim as beneficiaries, and not as purchasers for value; hence the rule announced in Walker v. Howard, 34 Tex. 478 and in Brown v. Elmendorf, 87 Tex. 56, 26 S.W. 1043, in our opinion, is not applicable in this case. If, as a matter of fact, appellant, by any act or conduct, has estopped himself to prosecute the present claim, it would constitute a defense, but the burden would be upon appellees to allege and prove the facts.

It follows that we are of opinion that the court below erred in denying Hal White Hardin recovery of one-half the cash surrender value of the two policies as of the date of his mother's death, September 30, 1940; therefore, the judgment below is reversed in that respect and also in adjudging costs against appellant, and judgment is here rendered in favor of the appellant against Hallie Hardin, Idessa Hardin and the other beneficiaries named appellees herein for the sum of $1,648.36, which appellee Insurance Company will pay from the proceeds of the policies; said appellant will also recover of and from appellees (except Byrd E. White, executor, and the Volunteer State Life Insurance Company) all costs incident to this appeal, for which execution may issue; the costs in the court below having been adjudged according to an agreement between the parties, the judgment in that respect is not disturbed; nor is the judgment below disturbed in any other respect. However, in order that the trial court may adjust future payments by the Insurance Company to the appellee beneficiaries in accordance with changed conditions brought about by the judgment in favor of the appellant, the cause is remanded to the trial court for that purpose only.