James W. K. LANDRY, Appellant,

v.

Hugh WILLIAMSON, Appellee.

No. 13489.

Court of Civil Appeals of Texas.

Houston.

April 14, 1960.

Rehearing Denied May 5, 1960.

Second Motion for Rehearing Overruled May 19, 1960.

Sam W. Davis, Williams, Lee & Lee, Thomas H. Lee, James W. Lee, Houston, for appellant.

Spiner, Pritchard & Thompson, Clark G. Thompson, Houston, for appellee.

BELL, Chief Justice.

Appellant was the stepson of appellee. Appellant's mother, the wife of appellee at the time of her death, died January 31, 1951. Two years later on January 20, 1953, appellant sued appellee asking for an accounting of the community property alleged

to have belonged to appellee and appellant's mother at the date of the mother's death. In December, 1958, an amended petition was filed setting up four counts. One count sought to recover a money judgment from appellee for a conversion of the one-half of the community property appellant inherited from his mother. His mother left no will and no administration was ever taken out on her estate. One count sought an accounting. One count sought a judgment declaring appellant to be the owner of a one-half interest in a 15 acre tract of land into which community property had allegedly gone. This count was conditioned on a finding that the tract was appellee's homestead. The fourth count was in trespass-to-try title and for partition of the 15 acre tract and for one-half interest in two lots that had been sold by appellee.

Appellee denied any conversion, but pled that if there was a technical conversion such was not fraudulent with intent to deprive appellant of any property, but that disposition was in accordance with the agreement and desires of both parties. Further, appellee pled that on the death of appellant's mother legal title to her one-half of the community real estate vested in appellant and if he no longer owned the real estate it was because of his own action and not appellee's. Appellee pled appellant told him he wanted none of the property and that appellant voluntarily conveyed his interest in the homestead to C. R. Hall.

On trial before the court without a jury, judgment was rendered for appellant for $7,885 and appellant was denied any interest in the real estate.

The evidence shows that on January 31, 1951, the date of appellant's mother's death, appellee and his wife owned as community property two pieces of real estate. They owned their home, which was fully paid for, it being located on the west ½ of Lot 3 and the adjoining east ½ of Lot 4 in Block 17, Fullerton Place in Houston. They also owned Lots 29 and 30 in Block 136 in Magnolia Park Subdivision in Houston. The

homestead first above described was conveyed to appellee and appellant's mother by deed naming both as grantees. The other piece of property was conveyed only to appellee. They also owned some personal property.

Appellant, the adopted son of Mrs. Williamson, was a small boy when his mother and appellee married. He was reared in the home of appellee, though he was never adopted by appellee, and the relations between the two were good. After appellant married, he and his wife continued to live in the home with appellee. They lived there until the home was sold in April, 1951, and then lived in the new home provided by appellee until the latter part of 1951. Appellant was 23 years of age when his mother died.

On April 28, 1951, appellee, by general warranty deed, conveyed the homestead to C. R. Hall. The conveyance was made as a down payment on 15 acres of land, being Lots 265–268 of Aldine Gardens, Fifth Section, which 15 acres was conveyed by Hall to appellee. Appellee was allowed credit of $8,500 by reason of this conveyance. Appellee also executed to Hall his note for $1,500 and assumed an indebtedness which was a charge against the 15 acres in the amount of $10,000. These amounts had been fully paid at the time of trial. The evidence does not reflect the source of the funds by which payment was made. However, appellee worked at the White Top Cab Company, a corporation, the stock of which the community owned. He also was in the trucking business. He paid the $1,500 note within a year and the $10,000 indebtedness was paid in monthly installments over the next seven years.

The Magnolia Park property was sold in 1956. Legal title to it was in appellee. A purchaser without notice of appellant's equitable interest would get good title. On trial it was agreed that the property should go to the purchaser. However, the value of it was included in the commu-

nity assets for which appellee was held accountable.

The evidence showed that the Magnolia Park property was rented for $50 per month from some time in 1952 until its sale in July, 1956. On trial, the court stated if the attorneys were going into this he would stop the trial and appoint an auditor because there were taxes, insurance and maintenance involved. Counsel then in open court waived an accounting of the rental from this property.

On October 17, 1951, appellant made an affidavit stating his mother and stepfather owned no community property. The next day he executed a general warranty deed conveying the homestead to C. R. Hall. He explained this by stating that Mr. Thompson, attorney for appellee, called him to come by and sign a paper that he thought was to enable appellee to get in the safety deposit box. He went, not to Mr. Thompson's office, but to Mr. Crystal's office in the Shell Building where he signed a paper (apparently the affidavit dated October 17, 1951). The next day Mr. Thompson called and told him he signed the wrong paper. He went back (apparently October 18) and signed the paper. Mr. Williamson, appellee, was apparently present because appellant testified that when Mr. Williamson handed him the affidavit, Williamson told him he had no interest because there was no community property and "they" were not even married when they bought the property. He said the instrument was not explained to him. After he signed it, he gave it to appellee. (We cannot tell from the testimony when the witness is talking about the affidavit and when he is talking about the deed on some occasions.) Finally appellant testified he took the affidavit home and on discussing it with his wife, he became aware of what community property was. He then delivered it to Mr. Williamson.

Mr. Williamson also made an affidavit October 17, 1951, stating there was no community property. He stated in testimony that he presumed there was no community property. He then stated he actually did not know what was meant by community property. He did not know who prepared the affidavits. The affidavits were made for the purpose of clearing title to the property sold. He knew appellant was told what they were for. Mr. Landry never asked him for any rents collected from the Magnolia Park property. He told Landry Mr. Hall wanted him to sign a paper showing he had no interest in the property. Landry told him he didn't want any of the property. He felt he owned the home since Landry said he wanted no part of it.

The evidence showed that the community owned $750 worth of furniture, beauty shop equipment which was sold for $200, and there was a bank account containing $998. These items at least were found by the court. Appellant contended that stock in the corporation was worth at least $7,000 though appellee testified it had no value and he transferred the business to a person agreeing to assume the debts of the corporation.

The court found the community owed funeral bills for the funeral of Mrs. Williamson and her mother of $900, a bill for a monument of $1,276, and notes at the Harrisburg National Bank of $2,502. The indebtedness totaled $4,678. The personal property, including the bank account, amounted to $1,948.

Appellant claims the evidence shows the community owned a 1950 GMC truck and a 1948 Hudson automobile. The Hudson was in appellee's name but he testified it belonged to the corporation. The company paid for it. He owned the truck for which he paid $1,600, but it wasn't paid for when his wife died, he still owing about $1,200 on it. What became of the truck is not shown.

Appellant urges that he is entitled to a one-half interest in the 15 acre tract because the homestead was used by appellee as a down payment. He further urges that he having shown there was other community property in the hands of appellee, the burden was on appellee to show it was

not used in payment of the indebtedness against the 15 acres that was subsequently paid by appellee.

The basis of appellant's contention is that the surviving husband is the trustee of the community estate for the benefit of the heirs of the deceased spouse and if he violates the trust and disposes of the property, the heirs have several remedies and the election of remedies is with the heirs and not the court. The heirs have the following remedies, so appellant asserts:

1. To sue the purchaser, who is shown not to be a bona fide purchaser for value, for the amount of the heirs' interest.

2. To treat the sale as a conversion and sue the survivor for the amount of the heirs' interest.

3. To pursue the community property, or its proceeds in case it was sold, so long as it can clearly be identified and have the property acquired by the use of trust assets impressed with a trust to the extent of the heirs' proportionate interest.

Appellant cites in support of this position the following cases: Highsaw v. Head, Tex.Civ.App., 202 S.W. 155, 156, affirmed Tex.Com.App., 228 S.W. 561; Hand v. Errington, Tex.Com.App., 242 S. W. 722, and Hardin v. Volunteer State Life Ins. Co., Tex.Civ.App., 193 S.W.2d 554.

These cases we do not think are applicable to the case before us. In each cited case, and in every case on the subject that we have been able to find, the survivor held legal title to the community property and the heir held only equitable title. By reason of this the survivor had legal power to convey the property. In such cases the deed into the community named only the husband as grantee and the wife had only an equitable title. Her heirs received only her title.

■ In the case before us the deed to the homestead named both appellee and appellant's mother as grantees. Therefore, they each held legal title to an undivided one-half interest. Patty v. Middleton, 82 Tex. 586, 17 S.W. 909; Stahl v. Westerman, Tex.Civ.App., 250 S.W.2d 325, no writ hist. The appellee, therefore, had no legal power to convey appellant's interest in the homestead. Appellee's deed to C. R. Hall dated April 28, 1951, though it purported to convey the full title, was wholly ineffectual for such purpose as legal title to one-half interest was in appellant.

■ Additionally, on October 18, 1951, appellant executed a deed conveying the homestead. This is the only act that took title out of him. We are not able to determine definitely whether appellant is contending that this act of his was brought about by fraud because appellee represented to him that there was in fact no community property. If this is his contention, the answer is there was no pleading of fraud. Further, there is evidence which would show that he should have recognized there was community property. He does not testify he relied upon appellee's statements. In any event, the court impliedly found against him on any such issue, if any, made by the evidence, and there is evidence to support such an implied finding.

■ Appellant also contends that he was entitled to an interest in the property because he showed there was community property and the burden was on appellee to show it was not used to pay the indebtedness against the property assumed by appellee. He cited Logan v. Logan, 138 Tex. 40, 156 S.W.2d 507, Hand v. Errington, supra, and Boettcher v. Means, Tex.Civ. App., 201 S.W.2d 255, no writ hist. These cases are not applicable. They are all cases where the trustee had commingled funds belonging to the trust estate with his personal funds and had then so invested both of them in property that the cestui was unable to prove what part of the invested funds was trust funds and what was personal funds of the trustee. In such case the burden is on the trustee to segregate the funds or else the whole will be held to be trust

property. However, we think the burden is on the cestui to show as a fact the commingling of the funds and to show that the commingled funds were invested in the property on which he seeks to impress a trust.

■ In this case there was absolutely no showing that there was any commingling of funds nor that any community property went into the 15 acres, except for the homestead, under the circumstances above shown. The only income shown from community funds was from the Magnolia Park property. Accounting for this was waived. However, appellant seems to contend we should presume it was used to in part pay the indebtedness against the 15 acres. However, it is not even known, as observed by the trial court, that the rentals exceeded taxes, insurance and maintenance. See Logan v. Logan, supra. The personal property on hand at Mrs. Williamson's death, aside from the fact that none of it was traced into the 15 acres, was insufficient in value to pay the community debts.

We, therefore, hold the court did not err in denying appellant any interest in the 15 acre tract of land.

■ Appellant complains that the trial court erred in excluding a financial statement furnished appellant's counsel by appellee's counsel which showed that the 10 shares of stock in the White Top Cab Co., Inc., were of a value of $7,000. The court apparently excluded the statement on the ground it had not been proven sufficiently to show the values placed on it by appellee or his authorized representative. Appellant contends it was admissible as an admission made by appellee through his counsel who had furnished the statement. On trial the appellee testified the stock was of no value. In passing upon whether it was reversible error to exclude the statement, it is to be noted that in his pleadings the appellee expressly admitted the statement was in the hands of appellant showing the stock to be worth $7,000. He denied it was of any

value and stated he did not know who placed such value on the stock. Nevertheless, it was an admission, together with other facts shown, that appellee's counsel had furnished appellant's counsel with the statement placing this value on the stock. The same evidence was, therefore, before the court and if there was any error in excluding the statement, it was harmless. The court chose to believe, as he had a right to do, that appellee's testimony given at the trial, that the stock was valueless, was correct and that the $7,000 shown to have been placed on the stock by the statement was not correct.

■ Appellee, by cross-point, urges that the court erred in allowing appellant $4,250, which represented one-half of the value of the homestead, because he says the appellant divested himself of title by his own deed. It is true, as we have shown above, that appellant divested himself of title to the homestead, so he could not claim an interest in the 15 acres acquired by appellee. However, there is evidence in the record that appellee told appellant that the deed to be executed was for the purpose of clearing title to the homestead for Hall. We think it not an unreasonable inference that while appellant was willing to clear the title in Hall he was not thereby waiving an accounting by appellee for one-half of the value of the property that appellee was getting the benefit of. Too, it is not an unreasonable inference from the facts that appellee intended to obtain the deed only to clear title, but would account to appellant for the value of the property. It will be presumed in support of the judgment that the court drew such inference.

The judgment of the trial court is affirmed.

### On Motion for Rehearing

■ Appellant in his motion for rehearing points out that our opinion states the case was tried before the court without a jury whereas actually trial was to a jury but at the end of the testimony it was

agreed there was no fact issue to be submitted to the jury and the jury was discharged and the matter decided by the court. We understood the record to show this. We were and are of the view that under the facts of this case this is the legal equivalent of a trial before the court without a jury.

Motion for rehearing overruled.